**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| INTELLECTUAL TECH LLC,<br><br>    Plaintiff.<br><br>v.<br><br>ZEBRA TECHNOLOGIES CORPORATION,<br><br>    Defendant. | Case No. 6:19-cv-00628-ADA |

**Zebra's Motion for Summary Judgment of
Invalidity Under 35 U.S.C. § 112
(Pursuant to Dkt. 50)**

**Table of Contents**

I. Introduction ........................................................................................................................... 1

II. Procedural posture ................................................................................................................ 2

III. Background .......................................................................................................................... 2

    A. Asserted patent ......................................................................................................... 2

    B. Original prosecution ................................................................................................. 4

    C. *Ex parte* reexamination ........................................................................................... 5

IV. Legal standard ...................................................................................................................... 5

    A. Summary judgment .................................................................................................. 5

    B. Section 112 ............................................................................................................... 6

        1. Written description ............................................................................................. 6

        2. Indefiniteness ..................................................................................................... 7

V. The asserted claims are invalid because the "processor" phrase in the asserted claims lacks written description support. ............................................................................. 8

VI. The asserted claims are invalid as indefinite. ..................................................................... 12

VII. Conclusion ......................................................................................................................... 13

## Table of Authorities

Page(s)

**Cases**

*Agilent Techs., Inc. v. Affymetrix, Inc.*,
    567 F.3d 1366 (Fed. Cir. 2009) ..................................................................................................6

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003) ..................................................................................................7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................................................5

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) ..................................................................................................7

*Capon v. Eshhar*,
    418 F.3d 1349 (Fed. Cir. 2005) ..................................................................................................6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................................5, 6

*Eason v. Thaler*,
    73 F.3d 1322 (5th Cir. 1996) .....................................................................................................6

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002) ...................................................................................................................6

*Gen. Electric Co. v. Wabash Appliance Corp.*,
    304 U.S. 364 (1938) ...................................................................................................................7

*H-W Tech., L.C. v. Overstock.com, Inc.*,
    758 F.3d 1329 (Fed. Cir. 2014) ................................................................................................13

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) ..............................................................................................6, 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) ...................................................................................................7, 8, 12

*Realtime Data, LLC v. Morgan Stanley*,
    554 F. App'x 923 (Fed. Cir. 2014) ...........................................................................................11

*Univ. of Rochester v. G.D. Searle & Co.*,
    358 F.3d 916 (Fed. Cir. 2004) ..................................................................................................11

*Vas-Cath Inc. v. Mahurkar*,
    935 F.2d 1555 (Fed. Cir. 1991) ............................................................................................7

**Statutes**

35 U.S.C. § 112 .......................................................................................................................6, 7

**Other Authorities**

Fed. R. Civ. P. 56(a) ........................................................................................................................5

I.        **Introduction**

The United States patent system relies on a fundamental bargain between the patentee and the public: in exchange for a limited monopoly, the patentee must fully disclose its invention to the public. The written description requirement holds the patentee to its end of the bargain. A patent claim violates this requirement, and is therefore invalid, where the patentee adds new subject matter to the claim during the patent's prosecution. That is exactly what happened here.

Plaintiff, Intellectual Tech LLC ("IT"), introduced the asserted claims to the patent during the patent's reexamination—12 years after filing the patent application. Each asserted claim recites a "processor" that is "configured for outputting at least one signal adapted to engage or disengage at least one device through at least one connection standard when in communication with an RFID circuit." This "processor" phrase ***does not appear anywhere*** in the patent's original disclosure—it is new matter that IT first introduced during prosecution to overcome the examiner's claim rejections and secure the patent's allowance. The patent specification fails to disclose two requirements of this critical claim language:

1.  *Temporal requirement*: The specification fails to disclose a processor that can output a specific signal "when in communication with an RFID circuit."

2.  *Adapted signal requirement*: The specification fails to disclose a processor that can output a "signal adapted to engage or disengage at least one device."

Because the specification fails to describe the "processor" phrase, every asserted claim is invalid.

The patent's disclosure defects do not end there. The "processor" phrase also renders the asserted claims indefinite. The claimed processor must be "configured for outputting" a "signal adapted to engage or disengage at least one device." But nowhere does the patent disclose this adapted signal, how a processor outputs this undisclosed signal, or how this undisclosed signal engages or disengages a device. As a result, the specification fails to inform skilled artisans about the scope of the claimed processor phrase with the reasonable certainty that the law requires.

1

II.  **Procedural posture**

On September 30, 2020, after the parties filed their claim construction briefs (Dkt. Nos. 42-47), the Court held a claim construction hearing. The hearing focused on Zebra's arguments that the "processor" phase renders the asserted claims indefinite and that, if the claims are found not indefinite, the "processor" phrase's construction should capture IT's prosecution disclaimer.

At the hearing, Zebra alerted the Court that the claims are invalid under Section 112 for additional reasons. *See* Dkt. 51 (9/30/20 Markman Hr'g Tr.) at 64:21-65:15. The Court permitted Zebra to file a summary judgment motion and stayed fact discovery unrelated to Zebra's summary judgment motion pending the resolution of that motion. *See id.* at 65:16-69:14; Dkt. 50 (Minute Entry). IT agreed to that procedure. *See* Dkt. 51 (9/30/20 Markman Hr'g Tr.) at 69:15-16. This summary judgment motion follows.[1]

III.  **Background**

  A.  **Asserted patent**

IT asserts U.S. Patent No. 7,233,247 ("the '247 patent"), entitled "Method and system for employing RFID tags in automated applications." Ex. 1[2] ('247 patent) at 1. FIG. 3, below, shows

---

[1] On October 1, 2020, the Court issued a claim construction order, in which the Court construed the "processor" phrase and the other disputed claim terms to have their plain and ordinary meaning. *See* Dkt. 52. Zebra maintains its claim construction positions for the "processor" phrase and the other disputed claim terms as set forth in its briefs and at the claim construction hearing and reserves its right to raise those positions in further proceedings, including on appeal.

[2] All exhibit numbers in this brief refer to exhibits to the accompanying declaration of Hersh Mehta.

2

the patent's sole embodiment. The disclosed RFID system 300 includes RFID base unit 304, RFID tag 302, computer network 314, and various devices 330, 334, 338. '247 patent at 4:13-17.



FIG. 3

In base unit 304, RF circuitry 308 communicates information to and from RFID tag 302. *Id.* at 4:30-32. A microcontroller 310 is also disclosed, which "can also be equipped to communicate with either a computer network 314, automated devices 330, and other devices" through various connection standards. *Id.* at 5:6-13. RFID base unit 304 can control "the operation of other external devices." *Id.* at 5:37-38. However, the '247 patent specification does not explain how the RFID base unit operates external devices. The specification does not disclose any algorithm by which the base unit would control any external device.

The '247 patent has 163 claims. Ex. 2 (Reexamination certificate). Claims 1-15 issued from the '247 patent's original prosecution but were canceled during reexamination after IT admitted those claims are unpatentable. *Id.* The remaining 148 claims issued from the reexamination proceeding. *Id.* In this case, IT accuses Zebra of infringing 65 claims—in particular, claims 48-61, 63, 65-79, 81-90, 117-120, 129-144, 146, 147, 149-152, and 154-159 ("the asserted claims"). As an example, claim 48 appears below with annotations:

3

> 48. An apparatus comprising:
> a RFID base unit incorporating *a processor wherein* the RFID base unit is at least configured to employ two or more connection standards of a plurality of connection standards and *the processor is configured for outputting at least one signal adapted to engage or disengage at least one device through at least one connection standard when in communication with an RFID circuit*, the RFID base unit further comprising:
> an antenna and RF circuitry;
> an operating system;
> an internal memory comprising dynamic random-access memory (DRAM); and
> a rechargeable battery capable of being charged; and
> a battery;
> wherein the RFID base unit is configured to transmit a notification through Voice Over Internet Protocol (VOIP); and
> wherein the RFID base unit is configured to communicate with an external device using Bluetooth, wireless, or high-frequency RFID.

*Id.* at cl. 48.[3] The emphasized phrase is "the 'processor' phrase." The "processor" phrase appears in every asserted claim and is central to Zebra's written description and indefiniteness arguments.

B.  **Original prosecution**

In 2005, the '247 patent applicant[4] filed the U.S. patent application that ultimately issued as the '247 patent. Ex. 1 ('247 patent) at 1. During prosecution, the examiner issued two office actions rejecting all of the pending patent claims. *See* Ex. 3 (9/21/2006 office action); Ex. 4 (1/16/2007 Office Action). In both office actions, the examiner relied primarily on prior art U.S. Patent Application Publication No. 2006/0174130 ("*Noble*"). *Id.* To overcome the prior art rejections, the applicant responded with several claim amendments and arguments, including

---

[3] All emphases have been added unless otherwise noted.

[4] In this brief, "applicant" refers to Metro Automation, Inc., which, according to the U.S. Patent & Trademark Office's public assignment records, was the '247 patent's assignee of record in 2005.

4

adding the "processor" phrase. *See* Ex. 5 (10/19/2006 amendment); Ex. 6 (2/9/2007 Amendment). In 2007, the U.S. Patent and Trademark Office issued the '247 patent with 15 claims, including claim 9 with the added processor limitation. *See* Ex. 7 (4/25/2007 notice of allowance).

### C. *Ex parte* reexamination

In 2017, a decade after the '247 patent issued, IT filed a request for *ex parte* reexamination of its own patent. *See* Ex. 8 (9/1/2017 reexamination request). In its reexamination request, IT admitted that every original claim of the '247 patent was invalid over U.S. Patent No. 6,353,406 ("*Lanzl*"). *Id.* at 2 ("Claims 1-15 are invalid as anticipated based on *Lanzl*."). IT cancelled those claims and proposed 148 new claims. *Id.*

The Patent Office ordered a reexamination, cancelling claims 1-15 and rejecting all the proposed new claims. *See* Ex. 9 (10/10/2017 decision on *ex parte* reexamination request). The examiner issued numerous rejections. *See* Ex. 10 (1/29/2018 office action); Ex. 11 (6/29/2018 office action). To overcome the prior art rejections, the applicant responded with arguments and claim amendments, including adding the "processor" phrase to the claims. *See* Ex. 12 (8/29/18 amendment); Ex. 13 (2/5/19 amendment). In 2019, the examiner issued a reexamination certificate including new claims 16-163. *See* Ex. 2 (Reexamination certificate).

## IV. Legal standard

### A. Summary judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "By its very terms, this standard provides that

the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. Once Zebra demonstrates the absence of a genuine dispute over any material fact, the burden shifts to IT to show there is a genuine factual issue for trial. *Celotex,* 477 U.S. at 323–24. "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996).

### B. Section 112

Patent laws reward innovation with a temporary monopoly. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 730 (2002). "The monopoly is a property right; and like any property right, its boundaries should be clear. This clarity is essential to promote progress, because it enables efficient investment in innovation." *Id.* at 731–32. As such, the "patent laws require inventors to describe their work in 'full, clear, concise, and exact terms.'" *Id.* at 731. All claim limitations must appear in the specification. *Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1572 (Fed. Cir. 1997). Among other things, 35 U.S.C. § 112 defines these boundaries by setting forth requirements for both the patents written description and the definiteness of the claims.

#### 1. Written description

"The 'written description' requirement implements the principle that a patent must describe the technology that is sought to be patented; the requirement serves both to satisfy the inventor's obligation to disclose the technologic knowledge upon which the patent is based, and to demonstrate that the patentee was in possession of the invention that is claimed." *Capon v. Eshhar,* 418 F.3d 1349, 1357 (Fed. Cir. 2005). It is for this reason, that "[t]he written description doctrine prohibits new matter from entering into claim amendments, particularly during the

continuation process." *Agilent Techs., Inc. v. Affymetrix, Inc.,* 567 F.3d 1366, 1379 (Fed. Cir. 2009). To wit, the written description serves "to prevent an applicant from later asserting that he invented that which he did not." *Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313, 1330 (Fed. Cir. 2003).

"The written description requirement is satisfied if the inventor conveys with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrates that by disclosure in the specification of the patent." *Quake,* 928 F.3d at 1373. "The invention is, for purposes of the 'written description' inquiry, *whatever is now claimed." Vas-Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1563–64 (Fed. Cir. 1991). That test "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). Furthermore, to satisfy the written description requirement, the applicant need not exactly describe the subject matter claimed or use the same terms as used in the claims, but "the specification must contain an equivalent description of the claimed subject matter." *Lockwood*, 107 F.3d at 1572; *see also Vas-Cath*, 935 F.2d at 1563.

### 2. Indefiniteness

A patent claim must "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as [the] invention." 35 U.S.C. Pre-AIA § 112, ¶ 2. "The limits of a patent must be known for the protection of the patentee, the encouragement of the inventive genius of others, and the assurance that the subject of the patent will be dedicated ultimately to the public. The statute seeks to guard against unreasonable advantages to the patentee and disadvantages to others arising from uncertainty as to their rights." *Gen. Electric Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 369 (1938). In *Nautilus*, the Supreme Court explained that a "patent is invalid for indefiniteness if its claims, read in light of the specification delineating the

patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). To provide definite claims, "a patent must be precise enough to afford clear notice of what is claimed, thereby 'apprising the public of what is still open to them.' Otherwise there would be 'a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims.'" *Id*. at 2129. (*quoting United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942)). Eliminating this "zone of uncertainty" is the responsibility of the patentee: "[A]bsent a meaningful definiteness check . . . patent applicants face powerful incentives to inject ambiguity into their claims. Eliminating that temptation is in order, and 'the patent drafter is in the best position to resolve the ambiguity in . . . patent claims.'" *Id*. (*quoting Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008)).

V.  **The asserted claims are invalid because the "processor" phrase in the asserted claims lacks written description support.**

The '247 patent specification fails to "convey[] with reasonable certainty to those skilled in the art that, as of the filing date sought, [the applicant] was in possession of the invention" because IT impermissibly added new matter during the claim amendment process. *Quake*, 928 F.3d at 1373.

Only a few lines of the '247 patent specification bear any cognizable connection to the "processor" phrase of the claims. Those few lines describe microcontroller 310 of Figure 3 as a general purpose computer. '247 patent at 4:61-5:21. The specification does not describe how microcontroller 310 communicates with any RFID circuitry. Sharony Decl. ¶ 28. The specification does not describe which signals microcontroller 310 outputs. *Id*. at ¶ 29. Nor does the specification disclose an algorithm with which the microcontroller 310 would create and output signals. *Id*. at ¶ 29. The specification simply treats microcontroller 310 as a disconnected

8

black box. *Id*. Consequently, the specification fails to disclose two separate requirements of the "processor" phrase of the claims.

First, the specification fails to disclose the "processor" phrase's temporal requirement—that the claimed "processor" be "configured for outputting" a specifically adapted signal "***when*** in communication with an RFID circuit." *Id*. at ¶¶ 33-35. The word "when" requires that the processor output the adapted signal ***at the time of*** communication with an RFID circuit. *Id*. at ¶ 33. The specification fails to provide any disclosure whatsoever explaining that a processor outputs a signal ***at the time of*** communication with an RFID circuit. *Id*. at ¶ 34. Rather, in its scant description, the specification suggests, at most, that a base unit may allow access to a device ***after*** the base unit has already interfaced with an RFID tag—an entirely different configuration than what is actually claimed. Specifically, in FIG. 4 (to the right), "an RFID tag interfaces the RFID base unit" in step 410, and only ***after*** that step is completed does the RFID base unit allow access in step



FIG. 4

424. '247 patent at 6:45-53. There is no disclosure of outputting the adapted signal ***when*** (*i.e.*, ***at the time***) the processor communicates with an RFID circuit. Sharony Decl. ¶¶ 33-35.

Second, the specification fails to disclose the "processor" phrase's adapted signal requirement—that the processor is configured for outputting a "signal ***adapted*** to engage or disengage at least one device through at least one connection standard." Sharony Decl. ¶¶ 36-39. Nothing in the specification discloses the structure of the adapted signal or how the processor would create the adapted signal. At most, the specification discloses the source of that signal

(microcontroller 310 in FIG. 3), the medium through which the signal would be transmitted (connection standards 316, 318, 320, 322, and 324 in FIG. 3) and the destination of that signal (a device on computer network 314 in FIG. 3). This disclosure, however, is not a description of either the structure of the adapted signal itself or how that signal is created (*i.e.*, adapted).

The specification's figures also fail to support this limitation. Figure 4 (shown above) is "a flow chart depicting the usage of an RFID system in a safety or security application." Included in the flow chart is a "Deny Access" step 414 and an "Allow Access" step 424. The description of Figure 4 in the specification simply states "[i]f the ID is not correct, access to a device or area is denied in step 414." There is no written description support on which a person of ordinary skill could rely to find that the patentee had possession of a way to go about adapting a signal to engage or disengage a device. *Id*. at ¶¶ 36-39. Other than naming these two command steps, neither Figure 4 nor any of the remaining '247 patent specification provides any supporting disclosure for the step of "adapting a signal" as required by the claims. Simply naming a command (e.g., Allow Access or Deny Access), as is the case in the '247 patent specification, does not provide a person of ordinary skill in the art sufficient description to convey that the inventor was in possession of the adapted signal for executing those commands or how the adapted signal executes the commands. *Id.*

The "signal" phrase is not part of the patent's original disclosure. Rather, the "signal" phrase resulted from a claim amendment made during the patent's original prosecution.[5] *Compare* '247 prosecution history at original cl. 1 ("the control module being configured to communicate with external devices through at least a first and a second connection standard of a

---

[5] A person of ordinary skill in the art would not have understood the '247 patent specification to contain an equivalent description. Sharony Decl. ¶ 39.

plurality of connection standards.") *with* '247 patent at cl. 48 ("the processor is configured for outputting **at least one signal adapted to engage or disengage** at least one device through at least one connection standard"). So, it is unsurprising that the specification fails to provide sufficient description given that the disclosed embodiments relate only to the claim scope of the originally filed claims—not to limitations like these that were added during prosecution and reexamination.

*   *   *

IT's failure to describe even one of these limitations requires a finding that the patent is invalid. But taken as a whole, these incurable defects clearly and convincingly highlight a broader problem with the '247 patent: by stretching its claims to cover scope far removed from the original disclosure, IT has fundamentally failed to "convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Realtime Data, LLC v. Morgan Stanley*, 554 F. App'x 923, 937 (Fed. Cir. 2014) (affirming summary judgment of invalidity for lack of written description where patent "contain[ed] limited language and no descriptive content and hence fail[ed] to show that Realtime invented or had possession of content-based or content-dependent data decompression"); *see also Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 917 (Fed. Cir. 2004) (affirming summary judgment of no written description and noting that a "patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification," because "[a]fter all, it is in the patent specification where the written description requirement must be met.").

## VI. The asserted claims are invalid as indefinite.

The asserted claims of the '247 patent also are invalid for violating Section 112 because each claim "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124.

The asserted claims, as published, are indefinite because they fail to describe how the "processor is configured for outputting at least one signal adapted to engage or disengage at least one device." This limitation has two distinct parts. **First**, the asserted claims require a processer that outputs a signal through a connection standard. '247 patent at 3:45–48. **Second**, the limitation states that the signal is "adapted to engage or disengage at least one device." *Id.* at 3:46-47. The fatal problem with the '247 patent is that, while it informs the public of the various "connection standards" the processor can emit a signal through, it omits key language that discloses to the public *how* that signal is configured in order to enable or disable an external device. For example, a person of ordinary skill in the art would not be able to determine how to program the processor to output a signal "adapted to engage or disengage at least one device." Sharony Decl. ¶¶ 40-43. This omission creates a persistent zone of uncertainty around the claim limitation. *Id.*

Without instructions on how the processor is programed, a person of ordinary skill in the art cannot determine the claims' scope. *Id.* at ¶ 42. It is insufficient that the claims recite that the signal is carried by a "connection standard" because this merely provides the means through which the signal is transported (*e.g.*, Bluetooth, wireless, Ethernet, etc.). *Id.* A person of skill in the art would know that there are multiple possible ways for the processor to carry out the claimed signal step. *Id.* A person of skill in the art also would know that the multitude of possible implementations would further depend on the type of device that was to be "engaged or disengaged." *Id.* ("Adapting a signal to 'engage or disengage' a device depends on the specific

12

external device. Such an adaptation is a **two-sided** problem that requires consideration of both the command being issued as well as the device being controlled."). This '247 patent specification does not provide disclosure on how to address either of these problems. Claims that are definite cannot as a matter of law leave the public in the dark as to how the claimed signal is "adapted." *H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1332-34 (Fed. Cir. 2014) (affirming motion for summary judgment finding claim invalid for indefiniteness where a material limitation was omitted and the omission was not evident on the face of the patent because "[t]o hold otherwise would potentially permit patentees to assert claims that they never asked for nor rightly attained.").

Importantly, nothing in the intrinsic evidence rescues this claim from a determination of indefiniteness as a matter of law. As established in Section V above, the specification lacks any description of adapting a signal, and thus cannot fill the gap in the asserted claims.

## VII. Conclusion

The foregoing clearly and convincingly establishes that the asserted claims are invalid for lacking written description support and are separately invalid for indefiniteness. The Court should grant Zebra's summary judgment motion and find the asserted claims invalid.

Date: October 13, 2020

Respectfully submitted,

*/s/ Brent A. Hawkins*
Brent A. Hawkins*
California Bar No. 314266
Illinois Bar No. 6243086
brent.hawkins@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

Hersh Mehta*
Illinois Bar No. 6306586
Amanda S. Williamson*
Illinois Bar No. 6280051
James J. Kritsas*
Illinois Bar No. 6313286
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 324-1000
Facsimile: (312) 324-1001

\**Admitted pro hac*

Elizabeth M. Chiaviello
Texas Bar No. 24088913
elizabeth.chiaviello@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002-5006
T. 713.890.5000
F. 713.890.5001

***Attorneys for Defendant***
***Zebra Technologies Corporation***

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on October 13, 2020, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case via the Court's CM/ECF system per Local Rule CV-5.

By: _/s/ Brent A. Hawkins_
Brent A. Hawkins
