# EXHIBIT 1

502496875     09/16/2013

# PATENT ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | CORRECTIVE ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | Corrective Assignment to correct the execution date of 04/02/2011 to read 04/18/2011 previously recorded on Reel 030295 Frame 0883. Assignor(s) hereby confirms the Security Agreement dated 04/18/2011. |

CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| OnAsset Intelligence, Inc. | 04/18/2011 |

RECEIVING PARTY DATA

| Name: | Main Street Capital Corporation |
|---|---|
| Street Address: | 1300 Post Oak Blvd. |
| Internal Address: | Suite 800 |
| City: | Houston |
| State/Country: | TEXAS |
| Postal Code: | 77056 |

PROPERTY NUMBERS Total: 11

| Property Type | Number |
|---|---|
| Patent Number: | 7233247 |
| Patent Number: | 7475806 |
| Patent Number: | 7538681 |
| Patent Number: | 7652576 |
| Patent Number: | 7791455 |
| Application Number: | 11457108 |
| Application Number: | 11839359 |
| Application Number: | 11945887 |
| Application Number: | 12167704 |
| Application Number: | 12178164 |
| Application Number: | 12331822 |

CORRESPONDENCE DATA

502496875

PATENT
REEL: 031217 FRAME: 0864

CH $440.00    7233247

| | |
|---|---|
| Fax Number: | 7132266308 |
| *Correspondence will be sent via US Mail when the fax attempt is unsuccessful.* | |
| Phone: | 713.226.6708 |
| Email: | gloperena@porterhedges.com |
| Correspondent Name: | Gabriel M. Loperena |
| Address Line 1: | 1000 Main St. |
| Address Line 2: | Floor 36 |
| Address Line 4: | Houston, TEXAS 77002 |

| | |
|---|---|
| ATTORNEY DOCKET NUMBER: | 007574-0075 |
| NAME OF SUBMITTER: | Gabriel M. Loperena |
| Signature: | /Gabriel M. Loperena/ |
| Date: | 09/16/2013 |
| | This document serves as an Oath/Declaration (37 CFR 1.63). |

Total Attachments: 12
source=CorrectedAgmnt#page1.tif
source=CorrectedAgmnt#page2.tif
source=CorrectedAgmnt#page3.tif
source=CorrectedAgmnt#page4.tif
source=CorrectedAgmnt#page5.tif
source=CorrectedAgmnt#page6.tif
source=CorrectedAgmnt#page7.tif
source=CorrectedAgmnt#page8.tif
source=CorrectedAgmnt#page9.tif
source=CorrectedAgmnt#page10.tif
source=CorrectedAgmnt#page11.tif
source=PrevAgmt#page1.tif

# PATENT AND TRADEMARK SECURITY AGREEMENT

This Patent and Trademark Security Agreement (as amended, supplemented or restated from time to time, the "*Agreement*"), dated as of April 18, 2011, is made by and among ONASSET INTELLIGENCE, INC., a Texas corporation ("*Borrower*") and each of its current and future Subsidiaries (collectively with Borrower, "*Debtor*"), for the benefit of MAIN STREET CAPITAL CORPORATION, a Maryland corporation ("*Secured Party*"), as agent for the ratable benefit of Lenders (defined below).

Recitals

A.   Debtor, Secured Party, and the lenders from time to time party thereto ("*Lenders*") have entered into that certain Loan Agreement dated the same date as this Agreement (as amended, supplemented or restated from time to time, the "*Loan Agreement*"), whereby pursuant to which, Lenders have agreed to make a certain senior secured term loan to Debtor in the aggregate amount of $3,000,000 on the Closing Date (defined in the Loan Agreement), and a conditional commitment to make additional investments in Debtor in an aggregate amount not to exceed $4,000,000 pursuant to the terms and conditions set forth in the Loan Agreement.

B.   As a condition to extending credit to or for the account of the Debtor, Secured Party has required the execution and delivery of this Agreement by Debtor.

ACCORDINGLY, in consideration of the mutual covenants contained in the Loan Documents and herein, the parties hereby agree as follows:

1.   Definitions. All terms defined in the Recitals hereto or in the Loan Agreement that are not otherwise defined herein shall have the meanings given to them in the Loan Agreement. In addition, the following terms have the meanings set forth below:

"*Patents*" means all of Debtor's right, title and interest in and to patents or applications for patents, fees or royalties with respect to each, and including without limitation the right to sue for past infringement and damages therefor, and licenses thereunder, all as presently existing or hereafter arising or acquired, including without limitation the patents listed on Exhibit A attached hereto.

"*Security Interest*" has the meaning given in *Section 2*.

"*Trademarks*" means all of Debtor's right, title and interest in and to: (i) trademarks, service marks, collective membership marks, registrations and applications for registration for each, and the respective goodwill associated with each, (ii) licenses, fees or royalties with respect to each, (iii) the right to sue for past, present and future infringement, dilution and damages therefor, and (iv) licenses thereunder, all as presently existing or hereafter arising or acquired, including, without limitation, the marks listed on Exhibit B attached hereto.

2.  **Security Interest**. Debtor hereby pledges, and grants to Secured Party a security interest (the "*Security Interest*"), for the ratable benefit of the Lenders, with power of sale to the extent permitted by law, in the Patents and in the Trademarks to secure payment of the Obligations. As set forth in the Loan Agreement, the Security Interest is coupled with a security interest in substantially all of the personal property of Debtor. This Agreement grants only the Security Interest herein described, is not intended to and does not affect any present transfer of title of any trademark registration or application and makes no assignment and grants no right to assign or perform any other action with respect to any intent to use trademark application, unless such action is permitted under 15 U.S.C. § 1060.

3.  **Representations, Warranties and Agreements**. Debtor represents, warrants and agrees as follows:

    (a) **Existence; Authority.** Borrower is a corporation duly organized, validly existing and in good standing under the laws of its state of organization, and this Agreement has been duly and validly authorized by all necessary organizational action on the part of Borrower.

    (b) **Patents.** Exhibit A accurately lists all Patents owned or controlled by Debtor as of the date hereof, or to which Debtor has a right as of the date hereof to have assigned to it, and accurately reflects the existence and status of applications and letters patent pertaining to the Patents as of the date hereof. If after the date hereof, Debtor owns, controls or has a right to have assigned to it any Patents not listed on Exhibit A, or if Exhibit A ceases to accurately reflect the existence and status of applications and letters patent pertaining to the Patents, then Debtor shall within 60 days thereafter provide written notice to Secured Party with a replacement Exhibit A, which upon acceptance by Secured Party shall become part of this Agreement.

    (c) **Trademarks.** Exhibit B accurately lists all Trademarks owned or controlled by Debtor as of the date hereof and accurately reflects the existence and status of Trademarks and all applications and registrations pertaining thereto as of the date hereof; provided, however, that Exhibit B need not list common law marks (i.e., Trademarks for which there are no applications or registrations) which are not material to Debtor's or any Affiliate's business(es). If after the date hereof, Debtor owns or controls any Trademarks not listed on Exhibit B (other than common law marks which are not material to Debtor's or any Affiliate's business(es)), or if Exhibit B ceases to accurately reflect the existence and status of applications and registrations pertaining to the Trademarks, then Debtor shall within sixty (60) days thereafter provide written notice to Secured Party with a replacement Exhibit B, which upon acceptance by Secured Party shall become part of this Agreement.

    (d) **Title.** Debtor has title to each Patent and each Trademark listed on Exhibits A and B, free and clear of all liens except liens permitted under the Loan Agreement, and will keep all Patents and Trademarks free and clear of all liens except liens permitted under the Loan Agreement.

**PATENT**
**REEL: 031217 FRAME: 0867**

(e)     **No Sale.** Except as permitted in the Loan Agreement, Debtor will not assign, transfer, encumber or otherwise dispose of the Patents or Trademarks, or any interest therein, without Secured Party's prior written consent.

(f)     **Defense.** Debtor will at its own expense and using commercially reasonable efforts, protect and defend the Patents and Trademarks against all claims or demands of all Persons other than those holding liens permitted under the Loan Agreement.

(g)     **Maintenance.** Debtor will at its own expense maintain the Patents and the Trademarks to the extent reasonably advisable in its business including, but not limited to, filing all applications to obtain letters patent or trademark registrations and all affidavits, maintenance fees, annuities, and renewals possible with respect to letters patent, trademark registrations and applications therefor.  Debtor covenants that it will not abandon nor fail to pay any maintenance fee or annuity due and payable on any Patent or Trademark, nor fail to file any required affidavit or renewal in support thereof, without first providing Secured Party:  (i) sufficient written notice, of at least thirty (30) days, to allow Secured Party to timely pay any such maintenance fees or annuities which may become due on any Patents or Trademarks, or to file any affidavit or renewal with respect thereto, and (ii) a separate written power of attorney or other authorization to pay such maintenance fees or annuities, or to file such affidavit or renewal, should such be necessary or desirable.

(h)     **Secured Party's Right to Take Action**. If Debtor fails to perform or observe any of its covenants or agreements set forth in this ***Section 3***, and if such failure continues for a period of ten (10) calendar days after Secured Party gives Debtor written notice thereof (or, in the case of the agreements contained in subsection (g), immediately upon the occurrence of such failure, without notice or lapse of time), or if Debtor notifies Secured Party that it intends to abandon a Patent or Trademark, Secured Party may (but need not) perform or observe such covenant or agreement or take steps to prevent such intended abandonment on behalf and in the name, place and stead of Debtor (or, at Secured Party's option, in Secured Party's own name) and may (but need not) take any and all other actions which Secured Party may reasonably deem necessary to cure or correct such failure or prevent such intended abandonment.

(i)     **Costs and Expenses.** Except to the extent that the effect of such payment would be to render any loan or forbearance of money usurious or otherwise illegal under any applicable law, Debtor shall pay Secured Party on demand the amount of all moneys expended and all costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Secured Party in connection with or as a result of Secured Party's taking action under subsection (h) or exercising its rights under ***Section 6***, together with interest thereon from the date expended or incurred by Secured Party at the applicable interest rate for the Principal Debt as set forth in the Loan Agreement.

(j)     **Power of Attorney.** To facilitate Secured Party's taking action under subsection (i) and exercising its rights under ***Section 6***, Debtor hereby irrevocably appoints (which appointment is coupled with an interest) Secured Party, or its delegate,

as the attorney-in-fact of Debtor with the right (but not the duty) from time to time while a Default exists to create, prepare, complete, execute, deliver, endorse or file, in the name and on behalf of Debtor, any and all instruments, documents, applications, financing statements, and other agreements and writings required to be obtained, executed, delivered or endorsed by Debtor under this **Section 3**, or, necessary for Secured Party, while a Default exists, to enforce or use the Patents or Trademarks or to grant or issue any exclusive or non-exclusive license under the Patents or Trademarks to any third party, or to sell, assign, transfer, pledge, encumber or otherwise transfer title in or dispose of the Patents or Trademarks to any third party. Debtor hereby ratifies all that such attorney shall lawfully do or cause to be done by virtue hereof. The power of attorney granted herein shall terminate upon the termination of the Loan Agreement as provided therein and the payment and performance of all Obligations.

4.     <u>Debtor's Use of the Patents and Trademarks</u>. Debtor shall be permitted to control and manage the Patents and Trademarks, including the right to exclude others from making, using or selling items covered by the Patents and Trademarks and any licenses thereunder, in the same manner and with the same effect as if this Agreement had not been entered into, so long as no Default exists.

5.     <u>Default</u>. Each of the following occurrences shall constitute a default under this Agreement (herein called "***Default***"):  (a) a Default, as defined in the Loan Agreement, shall occur; or (b) Debtor shall fail promptly to observe or perform any covenant or agreement herein binding on it; or (c) any of the representations or warranties contained in **Section 3** shall prove to have been incorrect in any material respect when made.

6.     <u>Remedies</u>. While a Default exists, Secured Party may, at its option, take any or all of the following actions:

(a)     Secured Party may exercise any or all remedies available under the Loan Agreement.

(b)     Secured Party may sell, assign, transfer, pledge, encumber or otherwise dispose of the Patents and Trademarks.

(c)     Secured Party may enforce the Patents and Trademarks and any licenses thereunder, and if Secured Party shall commence any suit for such enforcement, Debtor shall, at the request of Secured Party, do any and all lawful acts and execute any and all proper documents required by Secured Party in aid of such enforcement.

7.     <u>Miscellaneous</u>. This Agreement can be waived, modified, amended, terminated or discharged, and the Security Interest can be released, only explicitly in a writing signed by Secured Party. A waiver signed by Secured Party shall be effective only in the specific instance and for the specific purpose given. Mere delay or failure to act shall not preclude the exercise or enforcement of any of Secured Party's rights or remedies. All rights and remedies of Secured Party shall be cumulative and may be exercised singularly or concurrently, at Secured Party's option, and the exercise or enforcement of any one such right or remedy shall neither be a condition to nor bar the exercise or enforcement of any other. All notices to be given to Debtor

**PATENT**
**REEL: 031217 FRAME: 0869**

under this Agreement shall be given in the manner and with the effect provided in the Loan Agreement. Secured Party shall not be obligated to preserve any rights Debtor may have against prior parties, to realize on the Patents and Trademarks at all or in any particular manner or order, or to apply any cash proceeds of Patents and Trademarks in any particular order of application. This Agreement shall be binding upon and inure to the benefit of Debtor and Secured Party and their respective participants, successors and assigns and shall take effect when signed by Debtor and delivered to Secured Party, and Debtor waives notice of Secured Party's acceptance hereof. Secured Party may execute this Agreement if appropriate for the purpose of filing, but the failure of Secured Party to execute this Agreement shall not affect or impair the validity or effectiveness of this Agreement. A carbon, photographic or other reproduction of this Agreement or of any financing statement signed by Debtor shall have the same force and effect as the original for all purposes of a financing statement. This Agreement shall be governed by the internal law of Texas without regard to conflicts of law provisions. If any provision or application of this Agreement is held unlawful or unenforceable in any respect, such illegality or unenforceability shall not affect other provisions or applications which can be given effect and this Agreement shall be construed as if the unlawful or unenforceable provision or application had never been contained herein or prescribed hereby. All representations and warranties contained in this Agreement shall survive the execution, delivery and performance of this Agreement and the creation and payment of the Obligations.

8. THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED ON OR PERTAINING TO THIS AGREEMENT.

**[Signatures and acknowledgments are on the following page.]**

PATENT
REEL: 031217 FRAME: 0870

IN WITNESS WHEREOF, the parties have executed this Patent and Trademark Security Agreement as of the dates set out in the acknowledgments below, to be effective for all purposes as of the date first written above.

**DEBTOR:**

ONASSET INTELLIGENCE, INC.,
a Texas corporation

By: _____
Name: Adam Crossno
Title:  President

STATE OF  Texas            )
                           )
COUNTY OF Dallas           )

The foregoing instrument was acknowledged before me this 2 day of April, 2011, by Adam Crossno, the President of ONASSET INTELLIGENCE, INC., a Texas corporation, on behalf of the corporation.

TANJA M. DAVIS
My Commission Expires
April 22, 2014

_____
Notary Public

Signature and Acknowledgment Page to Patent and Trademark Security Agreement

**SECURED PARTY:**

MAIN STREET CAPITAL CORPORATION,
a Maryland corporation

By: _____
Name: Curtis L. Hartman
Title: Senior Vice President

STATE OF  Texas       )
COUNTY OF Harris      )

The foregoing instrument was acknowledged before me this 12 day of April, 2011, by Curtis L. Hartman, the Senior Vice President of MAIN STREET CAPITAL CORPORATION, a Maryland corporation, on behalf of the corporation.

_____
Notary Public

SUSAN CANNON
MY COMMISSION EXPIRES
August 21, 2014

Signature and Acknowledgment Page to Patent and Trademark Security Agreement

**PATENT
REEL: 031217 FRAME: 0872**

EXHIBIT A

UNITED STATES ISSUED PATENTS

| Title | Patent Number | Issue Date |
|---|---|---|
| Method and system for employing RFID tags in automated applications | 7,233,247 | 6/9/07 |
| Method and system of universal RFID communication | 7,475,806 | 1/13/09 |
| Method and apparatus for monitoring containerized ID tagged assets | 7,538,681 | 5/26/09 |
| Method and apparatus for locating and/or otherwise monitoring an ID tagged asset's condition | 7,652,576 | 1/26/10 |
| Method and apparatus for autonomous detection of a given location or situation | 7,791,455 | 9/7/10 |

UNITED STATES PATENT APPLICATIONS

| Title | Serial Number | Filing Date |
|---|---|---|
| Identifying Humans through Neural Activity Detection, Biological Frequency Identification | 11/457,108 | 7/12/06 |
| Method and Apparatus for Sanitizing or Modifying Flash Memory Chip Data | 11/839,359 | 8/15/07 |
| Method and Apparatus for Power Management and Multipath Error Mitigation | 11/945,887 | 11/27/07 |
| Method and Apparatus for providing interactive responses to requests from intelligent machines | 12/167,704 | 7/3/08 |
| Method and Apparatus for tracking a device through a process with a reusable wireless tag | 12/178,164 | 7/23/08 |
| Method and System of universal RFID communication - this is a continuation on another claim associated with issued patent 7,475,806 | 12/331,822 | 1/8/09 |

Exhibit A

FOREIGN ISSUED PATENTS

| Title | Country | Patent Number | Issue Date |
| --- | --- | --- | --- |

None.

A-2

EXHIBIT B

UNITED STATES ISSUED TRADEMARKS, SERVICE MARKS

AND COLLECTIVE MEMBERSHIP MARKS

REGISTRATIONS

| Mark | Registration Number | Registration Date |
|---|---|---|
| FLIGHTSAFE | 3,905,566 | 1/11/11 |
| CONTAINERSAFE | 3,901,832 | 1/4/11 |
| ONASSET | 3,891,924 | 12/21/10 |
| ONASSET | 3,813,372 | 7/6/10 |
| ONASSET INTELLIGENCE | 3,813,373 | 7/6/10 |

APPLICATIONS

| Serial No. | Word Mark | Status |
|---|---|---|
| 77888870 | FLIGHTSAFE | Notice of Allowance (NOA) sent (issued) to the applicant. Applicant must file a Statement of Use or Extension Request within six months of the NOA issuance date of 2010-11-30. No assignment has been recorded at the USPTO for Serial Number: 77888870 |
| 77832511 | ONASSET INTELLIGENCE | Notice of Allowance (NOA) sent (issued) to the applicant. Applicant must file a Statement of Use or Extension Request within six months of the NOA issuance date of 2010-11-30. No assignment has been recorded at the USPTO for Serial Number: 77832511 |
| 77888878 | CONTAINERSAFE | Notice of Allowance (NOA) sent (issued) to the applicant. Applicant must file a Statement of Use or Extension Request within six months of the NOA issuance date of 2010-09-28. No assignment has been recorded at the USPTO for Serial Number: 77888878 |

2186223v4

**PATENT
REEL: 031217 FRAME: 0875**

## COLLECTIVE MEMBERSHIP MARKS

None.

## UNREGISTERED MARKS

SENTRY

SMARTMOTION

HFID

VISION PLATFORM

GUARDIAN

ENVIROSAFE

ROUTE BUILDER

ALARM BUILDER

2186223v4

4

# PATENT ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
| --- | --- |
| NATURE OF CONVEYANCE: | SECURITY AGREEMENT |

CONVEYING PARTY DATA

| Name | Execution Date |
| --- | --- |
| OnAsset Intelligence, Inc. | 04/02/2011 |

RECEIVING PARTY DATA

| Name: | Main Street Capital Corporation |
| --- | --- |
| Street Address: | 1300 Post Oak Blvd., Suite 800 |
| City: | Houston |
| State/Country: | TEXAS |
| Postal Code: | 77056 |

PROPERTY NUMBERS Total: 11

| Property Type | Number |
| --- | --- |
| Patent Number: | 7233247 |
| Patent Number: | 7475806 |
| Patent Number: | 7538681 |
| Patent Number: | 7652576 |
| Patent Number: | 7791455 |
| Application Number: | 11457108 |
| Application Number: | 11839359 |
| Application Number: | 11945887 |
| Application Number: | 12167704 |
| Application Number: | 12178164 |
| Application Number: | 12331822 |

CORRESPONDENCE DATA

Fax Number:      7132261331
*Correspondence will be sent via US Mail when the fax attempt is unsuccessful.*
Phone:      713-226-6000

RECORDED: 09/16/2013

PATENT
REEL: 031217 FRAME: 0877