**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

INTELLECTUAL TECH LLC,

              Plaintiff,

      v.

ZEBRA TECHNOLOGIES
CORPORATION,

            Defendant.

Civil Action No. 6:19-cv-00628

**JURY TRIAL DEMANDED**

**PLAINTIFF INTELLECTUAL TECH LLC'S RESPONSE TO
ZEBRA'S MOTION FOR SUMMARY JUDGMENT FOR LACK OF STANDING**

## <u>TABLE OF CONTENTS</u>

I.     Zebra's Instant Motion Seeks Reconsideration of the Court's Order on Standing and Is
       Untimely ................................................................................................................. 1

II.    Intellectual Tech Has Standing to Bring this Lawsuit ........................................... 2

       A.      Intellectual Tech is the owner of the entire right, title and interest to the '247
               Patent and has Constitutional standing. ................................................... 3

               (i)     OnAsset's Default Did Not Convey the '247 Patent to Main Street. ......... 4

               (ii)    Purported default by Intellectual Tech did not transfer rights to the '247
                       Patent to Main Street. .................................................................... 8

       B.      Intellectual Tech Has Statutory Standing to Bring This Lawsuit ......................... 9

               (i)     Intellectual Tech has all substantive rights to enforce the '247 Patent. ...... 9

III.   If Intellectual Tech Lacks Standing, It Should be Allowed to Join or Substitute Necessary
       Parties ................................................................................................................. 13

IV.    Conclusion ........................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anterbury v. Odessa Separator, Inc.*,
   Case No. 5:16-cv-183, 2019 WL 896298 (E.D. Tex. Jan. 30, 2019)......................................11

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
   434 F.3d 1336 (Fed. Cir. 2006)...........................................................................................5

*Barroso v. Livingston*,
   Case No. SA-14-cv-421-XR, 2016 WL 4398544 (Aug. 8, 2016 W.D. Tex.) ...........................1

*City Bank & Trust Co. v. Otto Fabric, Inc.*,
   83 B.R. 780, 782 (D. Kan. 1988)..........................................................................................4

*Comerica Bank-Texas v. Texas Commerce Bank Nat'l Ass'n*,
   2 S.W.3d 723 (Tex. App.—Texarkana 1999, pet. denied) .......................................................6

*Eidos Display, LLC v. AU Optronics Corp.*,
   Case No. 6:11-cv-201, 2016 WL 6680578 (E.D. Tex. November 14, 2016)............................4

*Fieldturf, Inc. v. Southwest Recreational Industries, Inc.*,
   357 F.3d 1266 (Fed. Cir. 2004)...........................................................................................13

*Forsyth v. Barr*,
   19 F.3d 1527 (5th Cir. 1994) ..............................................................................................13

*Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.*,
   784 F.2d 665 (5th Cir. 1986) .................................................................................................2

*Holt v. United States*,
   No. 1976-72, 1973 WL 614 (D.D.C. Aug. 23, 1973) .............................................................5

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
   925 F.3d 1225 (Fed. Cir. 2019).............................................................................................3

*McDonald v. Rockland Trust Co.*,
   59 Mass. App. Ct. 836 (Mass. App. 2003) ............................................................................8

*Moon Royalty, LLC v. Boldrick Partners*,
   244 S.W.3d 391 (Tex.App.-Eastland 2007)...........................................................................6

*Patin v. Allied Signal, Inc.*, 77 F.3d 782, 785 n.1 (5th Cir. 1996) ...................................................2

*Propat Intern. Corp. v. Rpost, Inc.*,
   473 F.3d 1187 (Fed. Cir. 2007)...........................................................................................12

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995).................................................................................12

*Sky Technologies LLC v. SAP AG*,
    Case No. 2:06-cv-440, 2008 WL 5234644 (E.D.Tex. June 4, 2008)........................................8

*In re Transp. Design & Tech., Inc.*,
    48 B.R. 635 (Bankr. S.D. Cal. 1985) ...................................................................4

*Vaupel Textilmashinen KG v. Meccanica Euro Italia SPA*,
    944 F.2d 870 (Fed. Cir. 1991)..............................................................................11

On February 2, 2021, this Court found that "Intellectual Tech LLC is the rightful owner of the '247 patent, retains the right to enforce that patent, and thus has constitutional and statutory standing to bring a patent infringement suit against Zebra Technologies Corporation." Order on Den. Def.'s Mot. to Dismiss, ECF No. 75 (referred to herein as "the Court's Order on Standing"). Nothing has changed. And Zebra does not argue that actions occurring after the Court's Order on Standing relieved Plaintiff of standing. Rather, Zebra reargues the same points made in its Motion to Dismiss, and simply seeks reconsideration of the Court's Order on Standing. Defendant's motion for reconsideration, however, is untimely and should be denied. Further, as the Court previously determined, Zebra's arguments lack merit.

I.   **ZEBRA'S INSTANT MOTION SEEKS RECONSIDERATION OF THE COURT'S ORDER ON STANDING AND IS UNTIMELY**

On January 6, 2021, Zebra filed a Motion to Dismiss alleging Intellectual Tech lacked standing to bring the instant suit. Def.'s Mot. to Dismiss, ECF No. 62. In that motion, Zebra presented matters outside the pleadings, including certain loan, security, and forbearance agreements between Plaintiff, its parent company, and lender. *Id*. Under Federal Rule 12(d), Zebra's Motion to Dismiss must be treated as a motion for summary judgment under Rule 56. FED. R. CIV. P. 12(d). Following briefing on Zebra's Motion to Dismiss, the Court affirmatively held that Intellectual Tech had standing and denied Zebra's motion. *See* Court's Order on Standing.

In its instant Motion for Summary Judgment, Zebra does not contend that Plaintiff lost standing since the Court's Order on Standing. *See* Def.'s Mot. for Summ. J. Rather, Zebra merely parrots the same arguments made in its already-rejected Motion to Dismiss. *Compare* Def.'s Mot. to Dismiss, 9-19 *with* Def.'s Mot. for Summ. J., ECF No. 116, 6-14. Because Zebra effectively asks the Court to reconsider a prior order in this case, this Motion for Summary

Judgment should be analyzed as a motion under FED. R. CIV. P. 59(e). *See e.g., Barroso v. Livingston*, Case No. SA-14-cv-421-XR, 2016 WL 4398544 at *2 (Aug. 8, 2016 W.D. Tex.) (determining that the proper method for challenging an order on summary judgment is a motion filed pursuant to Rule 59(e)) (citing *Patin v. Allied Signal, Inc.*, 77 F.3d 782, 785 n.1 (5th Cir. 1996); *Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 669-670 (5th Cir. 1986) (holding motion calling into question the correctness of the underlying judgment was a Rule 59(e) motion despite the motion's title). Motions under Rule 59(e), however, must be filed within 28 days after the entry of the judgment, making Zebra's instant motion untimely. FED. R. CIV. P. 59(e).[1] Zebra's Motion for Summary Judgment was filed more than a year after the Court's Standing Order. Accordingly, Zebra's motion should be denied.

## II.    INTELLECTUAL TECH HAS STANDING TO BRING THIS LAWSUIT

This Court determined that Intellectual Tech has standing to bring this suit. *See* Court's Order on Standing. The Court made its decision based on the same record presented here. Indeed, Zebra presents no new facts or controlling law in support of its old "automatic transfer" theory. Attempting to bolster its case, Zebra misrepresents the language of the agreements and testimony of witnesses. But a review of the relevant evidence confirms that Intellectual Tech maintains standing to sue. Because Zebra presents the same arguments on the same record as its previously rejected motion, its instant motion should also be denied.

Further, contrary to Zebra's assertion, Intellectual Tech disputes Zebra's recitation of the "facts" presented in its instant motion. *See* Def.'s Mot. for Summ. J., 2-6. For example,

---

[1] Even if Zebra were to argue that its instant motion presents newly discovered facts—it does not—motions under Civil Rule 60(b) must be filed within one year after the court's order. FED. R. CIV. P. 60(c). Zebra's instant motion was filed more than a year after the Court's Standing Order and is also untimely under Rule 60.

Intellectual Tech disputes that Main Street's witness testified that "Main Street had, and continues to have the right to foreclose upon or liquidate the '247 Patent." *Id.* at 3. The cited testimony does not support Zebra's contention. *Id.* Further, as set forth in detail below, Zebra mischaracterizes the terms of various agreements. Moreover, Intellectual Tech disputes the headings in Zebra's purported "factual background" because those contentions are unsupported in fact and in law.

### A. Intellectual Tech is the owner of the entire right, title and interest to the '247 Patent and has Constitutional standing.[2]

In 2017, Intellectual Tech became the owner by assignment of the entire right, title, and interest to the '247 Patent.[3] *See* Patent Assign., ECF No. 71-2. As the current patentee, Intellectual Tech is entitled to bring the instant patent infringement lawsuit in its own name. 35 U.S.C. §281; *see also Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1228 (Fed. Cir. 2019) ("a patentee, *i.e.*, one with all rights or all substantial rights in a patent, can sue in its own name.") (internal citation omitted). Zebra does not dispute that the express language of the Patent Assignment agreement between OnAsset and Intellectual Tech adequately conveyed all substantial rights to the '247 Patent to Intellectual Tech in 2017. *See* Def.'s Mot. for Summ. J. Rather, Zebra argues only that: (1) a security interest granted by the prior patentee—OnAsset—operated to automatically convey all rights in the '247 Patent Main Street before OnAsset assigned the '247 Patent to Intellectual Tech; and alternatively, (2) a security interest

---

[2] The arguments set forth below effectively mirror those presented in Intellectual Tech's Response to Zebra's Motion to Dismiss because the arguments in Zebra's instant motion are virtually identical to those presented in Zebra's motion to dismiss. *See e.g.,* ECF Nos. 62-1 and 71-1. Zebra's filing of such a duplicative motion—without any new facts or controlling case law—wastes party and court resources.

[3] Intellectual Tech's assignment from OnAsset—the prior patentee—is registered with the USPTO, and Intellectual Tech is identified as the assignee of the '247 Patent.

granted by Intellectual Tech, after it acquired the '247 Patent, operated to automatically convey the '247 Patent to Main Street before the filing of this lawsuit. Zebra is wrong on both accounts. As explained below, neither security interest, granted by OnAsset in 2011 or Intellectual Tech in 2017, conveyed the '247 Patent to Main Street. And under the express terms of the security agreements, an event of default did not automatically transfer rights to the '247 Patent to Main Street. For the reasons discussed below, Zebra's motion should be denied.

### (i)      OnAsset's Default Did Not Convey the '247 Patent to Main Street.

#### a)      OnAsset's grant of a security interest did not convey ownership rights to the '247 Patent.

On April 18, 2011, OnAsset granted Main Street a security interest in the '247 Patent (referred to herein as "2011 Security Agreement"). Pat. and Trademark Sec. Agreement 2, ECF No. 62-2 ("[OnAsset] hereby pledges, and grants to [Main Street] a security interest…for the ratable benefit of the Lenders, with power of sale to the extent permitted by law, in the Patents and in the Trademarks to secure payment of the Obligations."). The 2011 Security Agreement did not convey or assign the '247 Patent to Main Street. *Id.* ("This Agreement grants only the Security Interest herein described"); *see also* 35 U.S.C. § 261 (requiring assignments to be in writing). And a security interest does not convey title or ownership to a patent. *See, e.g., Eidos Display, LLC v. AU Optronics Corp.*, Case No. 6:11-cv-201, 2016 WL 6680578, at *5 (E.D. Tex. November 14, 2016) ("a security interest in and of itself does not ordinarily create ownership rights in the patent") (citing *City Bank & Trust Co. v. Otto Fabric, Inc.*, 83 B.R. 780, 782 (D. Kan. 1988) ("[G]rant of a security interest [in a patent] need not include the conveyance of title or ownership rights.")); *In re Transp. Design & Tech., Inc.*, 48 B.R. 635, 639 (Bankr. S.D. Cal. 1985) ("[G]rant of a security interest is not a conveyance of a present ownership right in the patent,...."); *Holt v. United States*, No. 1976-72, 1973 WL 614, at *3 (D.D.C. Aug. 23,

1973) ("[Defendant] did not convey title in the patent application; it only granted a security

interest.").

> **b)** **OnAsset's default did not automatically transfer ownership of
> '247 Patent to Main Street.**

In approximately early 2017, and before the '247 Patent was assigned to Intellectual

Tech, OnAsset appears to have been in default of certain terms if its loan agreement with Main

Street, and therefore, also in default under the 2011 Security Agreement. But contrary to Zebra's

assertions, OnAsset's default of the 2011 Security Agreement did not automatically transfer

rights to the '247 Patent to Main Street. Neither the express terms of 2011 Security Agreement

nor any legal authority supports Zebra's contention to the contrary.

The express terms of the 2011 Security Agreement confirm that the parties did not intend

to automatically transfer the '247 Patent to Main Street upon default. *See, e.g.*, *Aspex Eyewear,*

*Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006) ("To determine whether an

agreement to transfer rights to a patent at issue amounts to an assignment or a license, we must

ascertain the intention of the parties and examine the substance of what was granted."). To begin,

there is no provision in the 2011 Security Agreement that expressly conveys the collateralized

patent and trademark assets to Main Street in the event of default, automatically or otherwise.

*See* 2011 Sec. Agreement; 35 U.S.C. § 261.

Lacking an express provision conveying the '247 Patent to Main Street, Zebra relies on

sections 3(j) and 6 of the 2011 Security Agreement in support of its arguments. Section 3(j)

states, in relevant part:

> ***To facilitate Secured Party's*** taking action under subsection (i) and ***exercising its rights***
> ***under Section 6***, Debtor hereby irrevocably appoints (which appointment is coupled with
> an interest) Secured Party, or its delegate, as the attorney-in-fact of Debtor with the right
> (but not the duty) from time to time while a Default exists to create, prepare, complete,
> execute, deliver, endorse or file, ***in the name and on behalf of Debtor***, any and all
> instruments…or, necessary for Secured Party, while a Default exists, to enforce or use the

Patents or Trademarks or to grant or issue any exclusive or non-exclusive license under the Patents or Trademarks to any third party, or to sell, assign, transfer, pledge, encumber or otherwise transfer title in or dispose of the Patents or Trademarks to any third party.

2011 Sec. Agreement at 3-4. (emphasis added). As expressly stated in 3(j), the appointment of Main Street as attorney-in-fact allows it to act under Section 6. And 3(j) makes clear that any such action will be in the name and on behalf of OnAsset, not as Main Street. *Id*; *see also*, *Comerica Bank-Texas v. Texas Commerce Bank Nat'l Ass'n*, 2 S.W.3d 723, 725 (Tex. App.— Texarkana 1999, pet. denied) ("A power of attorney is a written instrument by which one person, the principal, appoints another person, the attorney-in-fact, as agent and confers on the attorney-in-fact the authority to perform specified acts on behalf of the principal."). Zebra ignored this language in its original motion and continues to ignore the actual terms of the agreements. Zebra's automatic transfer theory conflicts with the clear language of the 2011 Security Agreement and the Court should reject it, again. [4]

Section 6 of the 2011 Security Agreement also contradicts Zebra's automatic transfer theory. Section 6 states, "[w]*hile a Default exists*, Secured Party *may, at its option,* take any or all of the following actions:…(b) Secured Party *may* sell, assign, transfer, pledge, encumber or otherwise dispose of the Patents and Trademarks. (c) Secured Party *may* enforce the Patents and Trademarks and licenses thereunder." 2011 Sec. Agreement at 4 (emphasis added). Section 6 clearly states that Main Street's ability to take any of the enumerated actions is limited to only

---

[4] While Intellectual Tech contends that the terms of the 2011 Security Agreement are unambiguous, even if any ambiguity exists, Texas courts have developed rules of interpretation to determine a contract's meaning and canons of construction to determine its legal effect. *Moon Royalty, LLC v. Boldrick Partners*, 244 S.W.3d 391, 394-395 (Tex.App.-Eastland 2007). The rules of interpretation include, among others: (1) to construe the agreement as whole; (2) to give each word and phrase its plain, grammatical meaning unless it definitely appears that such meaning would defeat the parties' intent; and (3) construe the agreement, if possible, to give each provision meaning and purpose so that no provision is rendered meaningless or moot. *Id*.

the time when a default exists and at its discretion. In other words, if a default occurred, Main Street, acting as an attorney-in-fact and on OnAsset's behalf, could perform any of the actions enumerated in the provision. When the default was cured, however, Main Street would have no ability, as an attorney-in-fact or otherwise, to perform any action described in Section 6. This is consistent with the normal application of a security interest. Namely, that ownership of the collateralized assets does not automatically transfer in the event of a default.

Zebra's automatic transfer theory conflicts with the plain language of Section 6. If ownership of the collateralized assets transferred automatically at default, Main Street would be able to perform the relevant actions described in the provision indefinitely, and not only while a default existed. Had the parties intended for the assets to be transferred automatically, as Zebra wrongly alleges, the parties would have needed to include a provision that allowed OnAsset to regain the collateral upon curing the default. There is no such clause, and the absence of such a clause is consistent with a reading of the agreements that OnAsset and Main Street never intended for any assets to be transferred automatically upon default.

Further, Section 6 gives Main Street discretion in determining to take any action. That discretion allows a secured creditor to determine whether to enforce its security interest, release its security interest, or as the case was here, forbear from enforcing its rights. *See* Forbearance Agreement 2, ECF No. 68-2 ("Lenders agree to forbear for a limited period of time and under certain limited circumstances in the exercise and enforcement of such rights, powers and remedies under the Loan Documents…"); First Amendment to Forbearance Agreement, ECF No. 116-9. Zebra's automatic transfer theory is contrary to the clear language of Section 6 and eliminates any discretion Main Street has under the agreement. Zebra's automatic transfer theory also causes provisions of the Forbearance Agreement to be meaningless. For example, in Section

I of the Forbearance Agreement, the parties recite that "[Main Street and Intellectual Tech] are entering into…(ii) that certain Patent and Trademark Security Agreement, dated as of the date hereof." *Id*. If Zebra's interpretation of the 2011 Security Agreement is correct—it is not— ownership of the '247 Patent would have transferred automatically to Main Street upon OnAsset's default, and there would be no need for Main Street to obtain any new security interest in the '247 Patent unless it first conveyed ownership to another entity.

As discussed above, Zebra's automatic transfer theory conflicts with the clear language of the agreements and the intent of the parties. Additionally, and tellingly, Zebra cites no legal authority supporting its automatic transfer theory. Indeed, courts have rejected the contention that default of a security interest automatically transfers collateral to the creditor. *See, e.g.*, *Sky Technologies LLC v. SAP AG*, Case No. 2:06-cv-440, 2008 WL 5234644, at *9 (E.D.Tex. June 4, 2008) (agreeing with parties to the suit that a default of a security interest does not automatically transfer possession of patent to the creditor); *see also McDonald v. Rockland Trust Co.*, 59 Mass. App. Ct. 836, 841 (Mass. App. 2003) ("an event of default does not automatically transfer possession to the creditor").[5] The Court should deny Zebra's motion.

### (ii)    Purported default by Intellectual Tech did not transfer rights to the '247 Patent to Main Street.

In June 2017, Intellectual Tech acquired the entire right, title, and interest to the '247 Patent from OnAsset and granted Main Street a security interest (referred to herein as the "2017 Security Agreement"). Pat. and Trademark Sec. Agreement 2, ECF No. 62-8 ("[Intellectual Tech] hereby pledges, and grants to [Main Street] a security interest"). Zebra's alternative

---

[5] *Sky Technologies* and *McDonald* analyze the secured transactions under Massachusetts law. But the UCC provisions adopted by Massachusetts for secured transactions are substantially the same as those adopted by Texas—Texas law governs the agreements between Main Street, OnAsset, and Intellectual Tech.

automatic transfer theory contends Intellectual Tech's purported default of the 2017 Security Agreement—in 2018—automatically transferred ownership to Main Street before Intellectual Tech filed this lawsuit. The relevant provisions of the 2017 Security Agreement mirror those of the 2011 Security Agreement. Zebra relies on the arguments presented with respect to its contention that default under the 2011 Security Agreement automatically transferred ownership of the '247 Patent to Main Street to support its contention that default under the 2017 Security Agreement also transferred ownership of the '247 Patent to Main Street. Zebra provides no new arguments relating to the 2017 Security Agreement, and it cites no legal authority for its proposition. For the same reasons as discussed above—and in response to Zebra's first motion—Zebra's arguments fail. The Court should once again deny Zebra's motion.

### B. Intellectual Tech Has Statutory Standing to Bring This Lawsuit

Besides repeating its arguments relating to constitutional standing, Zebra contends that Intellectual Tech lacks statutory standing to sue based on certain provisions of the Grant-Back License Agreement between Intellectual Tech and OnAsset. Zebra is wrong.

### (i)    Intellectual Tech has all substantive rights to enforce the '247 Patent.

#### a)    Intellectual Tech has all substantive rights to enforce the '247 Patent.

Zebra contends that "the Grant-Back License Agreement obligates Intellectual Tech to bring suit under the '247 Patent against any alleged infringer identified by OnAsset" and that "Intellectual Tech has no discretion in whether to file suit in the first place." Def.'s Mot. for Summ. J. at 12-13. This is false. The relevant provision from the Grant-Back License Agreement contradicts Zebra's argument:

> Licensor shall bring suit or defend a declaratory judgment action and control the conduct thereof, including settlement, to stop infringement of any Licensed IP, **subject, in each case, to Licensor's reasonable discretion** with respect to (i) the relative costs and prospective benefits of bringing such suit or defending such

action and (ii) the availability of sufficient cash on hand to adequately fund such
suit or the defense of such action.

Grant-Back License Agreement 2, ECF No. 68-5 at 2 (emphasis added). Intellectual Tech thus

maintains the right to decide whether to challenge or indulge infringement.

Zebra also argues that the Grant-Back License requires Intellectual Tech to consult with

OnAsset regarding decisions which could affect the scope or enforcement of any issued claims or

the potential abandonment of such patent application or patent, but articulates no reason as to

how such a provision strips Intellectual Tech of standing. While the Grant-Back License may

require Intellectual Tech to consult with OnAsset in this regard, it does not require Intellectual

Tech to obtain OnAsset's consent before engaging in any such action. Intellectual Tech's ability

to make any decision affecting the scope or enforcement of any patent is, therefore, unrestricted.

Zebra cites no authority to the contrary.

Zebra contends that the Grant-Back License Agreement requires Intellectual Tech to

"seek approval from the Main Street managers before engaging in 'Monetization Action costs

that exceed $50,000.'" Def.'s Mot. for Summ. J. at 13. Zebra, like it did in its prior motion,

misrepresents the truth. The Grant-Back License Agreement includes no such requirement. *See*

Grant-Back License. Even if Zebra meant to refer to the Limited Liability Company Agreement

of Intellectual Tech LLC, and specifically Section 7(d)(xvi), Zebra reads the provision wrong.

Section 7(d)(xvi) requires the approval or consent of at least one Investor Manager and vote of

the Managers—all of whom are members of *Intellectual Tech's* Board of Managers. *See* Limited

Liability Company Agreement at 2-4, ECF No. 71-3. The provision does not require approval or

consent from Main Street.

        **b)**       **Intellectual Tech has all substantive rights to alienate the '247 Patent.**

Zebra next complains that Intellectual Tech lacks standing because it granted a right-of-first-refusal to OnAsset relating to any patent or patent application Intellectual Tech decides to abandon. Def.'s Mot. for Summ. J. at 13. The provision does not impact or restrict Intellectual Tech from deciding which patents or applications to abandon. Moreover, such a right-of-first-refusal is a minor derogation of Intellectual Tech's rights, if at all, and fails to defeat standing. *See, e.g.*, *Vaupel Textilmashinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991) (determining that reversionary right to patent in the event of bankruptcy or termination of production, among other retained rights, failed to defeat standing).

Similarly, Zebra wrongly contends that Intellectual Tech's grant of an irrevocable, non-exclusive license to OnAsset defeats standing. Def.'s Mot. for Summ. J. at 13. Zebra also appears to contend that to have standing, plaintiff must be able to freely terminate any license. Zebra, cites no authority for its specific contentions, and instead, relies only on the general proposition that restrictions on the right to dispose of a patent is a factor in determining whether an agreement grants all substantive rights to a patent. *Id*. But Zebra makes no showing that an irrevocable, non-exclusive license restricts Intellectual Tech's ability to dispose of the '247 Patent. Indeed, the grant of a non-exclusive license does not strip the patentee of standing. *See, e.g.*, *Anterbury v. Odessa Separator, Inc.*,  Case No. 5:16-cv-183, 2019 WL 896298 at *2 (E.D. Tex. Jan. 30, 2019) ("a non-exclusive or 'bare' license – i.e., a covenant by the patent owner not to sue the licensee for making, using, or selling the patented invention and under which the patent owner reserves the right to grant similar licenses to other entities – confers no constitutional standing on the licensee to bring suit or to join a suit with the patentee because a bare licensee suffers no legal injury from infringement.") (citing *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995)). Further, the Grant-Back License Agreement, expressly

contemplates that Intellectual Tech may freely transfer or sell the '247 Patent. *See, e.g.*, 61-5 at 3 ("It shall be a condition of any transfer or sale of the Licensed IP or any change of control of Licensor that the License granted to Licensee under this Agreement shall survive any such transaction.").

c)   **No other agreement between Intellectual Tech, OnAsset, and Main Street deprives Intellectual Tech of standing.**

Zebra asserts that certain terms of the Forbearance Agreement and Collateral Assignment of Rights Agreement strip Intellectual Tech of statutory standing. Again, Zebra is wrong. Zebra cites no provision from the Forbearance Agreement to support its contention that OnAsset is entitled to a share of any monetary proceeds from the '247 patent. Even if the Forbearance Agreement did provide OnAsset with such a right —it does not—the fact that a patent owner and licensee may share in any proceeds from a patent does not strip the patentee from standing to sue. *Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007) ("To be sure, the fact that a patent owner has retained a right to a portion of the proceeds of the commercial exploitation of the patent, as [patentee] has done in this case, does not necessarily defeat what would otherwise be a transfer of all substantial rights in the patent.").

Zebra wrongly suggests that the Forbearance Agreement grants to OnAsset a license to the '247 Patent but cites no provision from the agreement in support of its conclusory assertion. The Forbearance Agreement provides no such grant. Regardless, as set forth above, the grant of a bare, non-exclusive license does not deprive Intellectual Tech of standing to sue. *See Rite-Hite* at 1552.

Finally, Zebra seeks to rely on a security interest granted by OnAsset to Main Street in OnAsset's rights under the Collateral Assignment of Rights Agreement to support its contention that Intellectual Tech lacks standing to bring this action. Yet again, Zebra cites no legal authority

12

for its proposition. As discussed above, Intellectual Tech's grant of a non-exclusive license to OnAsset does not impact Intellectual Tech's standing to sue. And any security interest that OnAsset may have granted to Main Street in OnAsset's rights under its non-exclusive license similarly fails to impact Intellectual Tech's standing to bring this case.

For the reasons discussed above, Zebra's motion should be denied. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) ("unsubstantiated assertions are not competent summary judgment evidence.").

## III.   IF INTELLECTUAL TECH LACKS STANDING, IT SHOULD BE ALLOWED TO JOIN OR SUBSTITUTE NECESSARY PARTIES

As set forth above, Zebra's Motion for Summary Judgment lacks merit and the Court should deny it for a second time. But even if the Court determines it should deviate from its prior decision and determine that Intellectual Tech lacks standing—it should not given that no new facts or law are presented in the instant motion—the Court should grant Intellectual Tech leave to cure any standing defect. *See Fieldturf, Inc. v. Southwest Recreational Industries, Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004) ("Ordinarily, dismissal for lack of standing is without prejudice. On occasion, however, a dismissal with prejudice is appropriate, especially where it is plainly unlikely that the plaintiff will be able to cure the standing problem. An exclusive licensee can cure a defect in standing by joining the patentee or the successor in title to the patentee." (internal citations and quotations omitted)). Here, Zebra admits that Main Street has all substantive rights to enforce the '247 Patent. Def.'s Mot. for Summ. J. at 1-2. Accordingly, any standing issue can be cured by joining (or substituting) any indispensable party—such as Main Street.

**IV.    CONCLUSION**

Zebra repackages its earlier motion in the instant Motion for Summary Judgment. This motion for reconsideration is untimely and barred under Rule 59(e) and 60(c). Further, this motion presents no new facts or controlling law that would warrant a different result than the Court reached the first time. And just like before, Zebra's automatic transfer theory is unsupported by the language of the relevant agreements and controlling case law. Accordingly, Zebra's motion should be denied, again.

Dated: March 3, 2022                    Respectfully submitted,

                                        */s/ Vishal Patel*
                                        Gary R. Sorden
                                        Texas Bar No. 24066124
                                        gsorden@coleschotz.com
                                        Aaron Davidson
                                        Texas Bar No. 24007080
                                        adavidson@coleschotz.com
                                        Niky R. Bagley (admitted via *pro hac vice*)
                                        Texas Bar No. 24078287
                                        nbagley@coleschotz.com
                                        Brian L. King
                                        Texas Bar No. 24055776
                                        bking@coleschotz.com
                                        James R. Perkins
                                        Texas Bar No. 24074881
                                        perkins@coleschotz.com
                                        Vishal Patel
                                        Texas Bar No. 24065885
                                        vpatel@coleschotz.com

                                        COLE SCHOTZ, P.C.
                                        901 Main Street, Suite 4120
                                        Dallas, Texas 75202
                                        Tel: (469) 557-9390
                                        Fax: (469) 533-1587

                                        **ATTORNEYS FOR PLAINTIFF
                                        INTELLECTUAL TECH LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2022, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Texas, Waco Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means. Copies of documents filed under seal were served on opposing counsel via email.

                                        */s/ Vishal Patel*
                                        Vishal Patel