**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| INTELLECTUAL TECH LLC,<br><br>　　Plaintiff,<br><br>v.<br><br>ZEBRA TECHNOLOGIES CORPORATION,<br><br>　　Defendant. | Case No. 6:19-cv-00628-ADA<br>**FILED UNDER SEAL** |

**DEFENDANT ZEBRA TECHNOLOGIES CORPORATION'S REPLY BRIEF
IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT FOR LACK OF STANDING**

I.  **THE PARTIES AGREE THAT MAIN STREET HAS VESTED EXCLUSIONARY RIGHTS IN THE '247 PATENT, THUS INTELLECTUAL TECH LACKS CONSTITUTIONAL STANDING**

There is no dispute that OnAsset and IT ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the Loan Agreement and the 2011 and 2017 Patent Security Agreements[1] (collectively, "Security Agreement"). D.I. 123, Opposition Brief, 5; D.I. 116-8, Deposition Tr. Of D. Burke, 172:20-24 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); D.I. 116, Opening Brief, Section II.B. There is also no dispute that the Security Agreements gave Main Street the right to sell, assign, license and enforce the '247 Patent when OnAsset and Intellectual Tech defaulted on each of those agreements. D.I. 123 at 7; D.I. 62-2, 2011 Patent Security Agreement, §§ 2, 3(j), 4-6; D.I. 62-8, 2017 Patent Security Agreement, §§ 2, 3(j), 4-6; D.I. 61-6, Joinder Agreement. Main Street's undisputed right to assign, sell, license, and enforce the '247 Patent deprives IT of the exclusionary rights necessary to maintain constitutional standing. *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265-67 (Fed. Cir. 2010).

IT's only rebuttal is that the ▮▮▮▮▮ did not "automatically transfer ownership of the '247 Patent to Main Street." D.I. 123 at 5. IT's argument misses the mark. The issue is not whether *ownership* of the '247 patent transferred upon default, but rather whether the rights that Main Street received deprive IT of its exclusive ability to exclude others from using the purported invention. Here, Main Street's rights to sell, assign, and license the '247 Patent do just that—they prevent IT from excluding parties, such as Zebra (who may obtain rights from Main Street), from using the purported invention, thereby depriving IT of the exclusionary rights necessary to

---

[1] Capitalized terms not otherwise defined have the meaning set forth in the Table of Abbreviations from Zebra's Opening Brief in support of its Motion for Summary Judgment. D.I. 116.

maintain constitutional standing. Because these ▮ existed at the inception of the lawsuit, IT's standing defect cannot be cured and its infringement claims must be dismissed. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) ("'if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured' after the inception of the lawsuit.") (*quoting Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,* 402 F.3d 1198, 1203 (Fed. Cir. 2005)).

> A. **The Security Agreements Transferred Exclusionary Rights in the '247 Patent to Main Street**

The Security Agreements strip OnAsset and IT of the exclusionary rights necessary to maintain standing after default. For instance, Sections 4 and 6 of the Security Agreements transferred substantial patent rights, "including the right to exclude others," that became vested upon a default:

> 4. <u>Debtor's Use of the Patents and Trademarks</u>. Debtor shall be permitted to control and manage the Patents and Trademarks, including the right to exclude others from making, using or selling items covered by the Patents and Trademarks and any licenses thereunder, in the same manner and with the same effect as if this Agreement had not been entered into, so long as no Default exists.

> 6. <u>Remedies</u>. While a Default exists, Secured Party may, at its option, take any or all of the following actions:
>
> (a) Secured Party may exercise any or all remedies available under the Loan Agreement.
>
> (b) Secured Party may sell, assign, transfer, pledge, encumber or otherwise dispose of the Patents and Trademarks.
>
> (c) Secured Party may enforce the Patents and Trademarks and any licenses thereunder, and if Secured Party shall commence any suit for such enforcement, Debtor shall, at the request of Secured Party, do any and all lawful acts and execute any and all proper documents required by Secured Party in aid of such enforcement.

D.I. 62-2, 2011 Patent Security Agreement, §§ 4, 6; D.I. 62-8, 2017 Patent Security Agreement, §§ 4, 6.

The plain meaning of these terms is clear. While OnAsset or IT is in default, neither have the right to "control and manage the ['247 Patent]" and cannot "exclude others from making, using or selling items covered by the ['247 Patent]." *Id*. at § 4. Main Street, on the other hand, is expressly permitted to "sell, assign, transfer . . . [and] . . . enforce the ['247 Patent]." *Id*. at §6. Thus, it is clear based on the plain meaning of the Security Agreements that IT lacks the exclusionary rights necessary to maintain standing.

The facts of this case are strikingly similar to those of *Uniloc USA, Inc. v. Apple, Inc.*, No. C 18-00358 WHA, 2020 WL 7122617, at *1 (N.D. Cal. Dec. 4, 2020). In *Uniloc*, a creditor provided Uniloc a loan to fund its patent infringement lawsuit. *Id*. at *1. The creditor's security interest under the loan granted the creditor a broad license to the asserted patents "following an Event of Default." *Id*. After Uniloc defaulted, the Court held "the Unilocs *did* default, *never* cured, and when they sued here, [the creditor] Fortress enjoyed a wide right to license the '203 patent *which divested the Unilocs of standing to sue.*" *Id*. at *4. Here, as in *Uniloc*, the Security Agreements granted Main Street an exclusive right to license, enforce, or sell the '247 patent following OnAsset's default, which has neither been cured nor waived. Like the *Uniloc* plaintiff, Main Street's exclusive right to license, enforce, or sell the '247 patent to any party, including Zebra, deprives IT of constitutional standing to sue.

### B. Transfer of Exclusionary Rights, not Ownership, Determine Constitutional Standing

IT does not even attempt to argue that it has exclusionary rights in the '247 patent. Rather, IT contends it is a "patentee" as a result of the patent assignment between OnAsset and IT and that its ▇▇▇▇ did not automatically transfer ownership of the patents to Main Street. D.I. 123 at 3. But, whether IT is a patentee or whether its ownership right automatically transferred to Main Street upon IT's ▇▇▇▇ has no bearing on constitutional standing. The salient question is whether

3

the rights that Main Street obtained from the Security Agreements, which vested upon OnAsset's and IT's ▮▮▮▮▮, deprive IT of exclusionary rights in the '247 Patent. And, the answer to that question is yes. Here, IT and OnAsset alienated their exclusionary rights to Main Street and now lack constitutional standing. *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019); *Alfred E. Mann*, 604 F.3d 1354, 1362 (Fed. Cir. 2010) (requiring exclusionary rights for the patentee).

### C.   Main Street's Rights Are Not Encumbered by OnAsset or Intellectual Tech

IT's further argument that Section 3(j)'s grant of a power of attorney to Main Street *requires* Main Street to act only in OnAsset's name and on OnAsset's behalf when exercising its rights under Section 6 is similarly unfounded and irrelevant. *See* D.I. 123, Resp. Br., 6 ("And 3(j) makes clear that any such action under Section 6 will be in the name and on behalf of OnAsset, not as Main Street."). Nothing in the Security Agreements require Main Street to use its power of attorney when exercising its rights. *See* D.I. 62-2, §§ 3(j), 4, 6; D.I. 62-8, §§ 3(j), 4, 6. Rather, the power of attorney is intended to "**facilitate [Main Street]** . . . exercising its rights under **Section 6**." *Id*. (emphasis added). IT does not and cannot point to any support for its proposition that "facilitate" means requires. *See* D.I. 123 at 5-6.

Even assuming, *arguendo*, that the Security Agreements require Main Street to exercise its Section 6 rights only in OnAsset's name and on OnAsset's behalf, Intellectual Tech's argument still fails. It is undisputed that OnAsset alone attempted to assign the '247 Patent to Intellectual Tech. *See* D.I. 71-2 at IT000147 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Likewise, Intellectual Tech sued Zebra in its own name. *See* Dkt. 1 ¶ 3. Thus, regardless of any requirements imposed by Section 3(j) or otherwise, OnAsset and Intellectual Tech still lacked sufficient rights to take

4

action *without Main Street* and, as a result, are without sufficient rights to maintain standing in this case.

### D. Intellectual Tech's Constitutional Standing Defect Cannot Be Cured

Because IT lacked constitutional standing when it filed suit, this Court must grant Zebra's summary judgment motion and dismiss IT's patent claims against Zebra. Defects in constitutional standing cannot be cured by the addition of a party with standing, *Paradise Creations, Inc. v. U V Sales, Inc.,* 315 F.3d 1304, 1309 (Fed. Cir. 2003) ("in order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit.*"), nor by the subsequent purchase of an interest in the patent in suit. *Gaia Techs., Inc. v. Reconversion Techs., Inc.,* 93 F.3d 774, 780 (Fed. Cir. 1996) ("Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue…Inevitably, delay and expense would be the order of the day.").

The doctrine of standing is an essential part of the case-or-controversy requirement of Article III and is a constitutional prerequisite to the Court's subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "The party invoking federal jurisdiction bears the burden of establishing the[ ] elements [of standing]." *Id*. at 561.  Here, IT has failed to meet its burden to demonstrate it has standing and the Court must dismiss its infringement claims.

## II. THE PARTIES AGREE THAT MAIN STREET HAS VESTED SUBSTANTIAL RIGHTS IN THE '247 PATENT, THUS INTELLECTUAL TECH ALSO LACKS STATUTORY STANDING

IT also lacks statutory standing. To bring a cause of action under Section 281, the plaintiff must be a "patentee" or "successor in title" to the '247 patent. The determination of a "patentee" is an all-or-nothing proposition: a patent has only one "patentee" at a given time and cannot have "multiple separate owners." *Alfred E. Mann.*, 604 F.3d at 1359. Thus, the party that first obtains

5

the patent remains the "patentee" until it assigns those patents to another. *Id.* Whether an assignment took place does not depend on labels. *Lone Star*, 925 F.3d at 1229. Rather, the court must examine the "totality" of an agreement to determine whether the patent owner transferred "all substantial rights" in the patent to another party. *Id.*

Here, there is no dispute that because of OnAsset's and IT's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Main Street has the exclusive right and ability to "sell, assign, transfer, pledge, encumber or otherwise dispose of the ['247 Patent]" and "enforce the ['247 Patent] and any licenses thereunder." D.I. 62-2 at § 6; D.I. 62-8 at § 6; D.I. 61-3 at IT001689; D.I. 116 at Sections II.B-C. Main Street's vested rights transferred in the Security Agreements preclude IT from establishing that it has the substantial rights necessary to maintain statutory standings. *See, supra*, Section I.

IT's only argument for statutory standing is that it must be a patentee because OnAsset executed an assignment to IT. But, as discussed above, OnAsset could not validly assign the '247 Patent or transfer any substantial rights to IT while it was in default of the Loan Agreement because OnAsset had contracted away its rights. *See Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1382 (Fed. Cir. 2000). Further, the Federal Circuit has repeatedly recognized, labels and titles of agreements are not controlling. *See, e.g.*, *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 618 (Fed. Cir. 2016) ("We have not ... treat[ed] bare formalities of 'title' transfer as sufficient to determine that an 'assignment' of the entire exclusive right has occurred."); *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1218 (Fed. Cir. 2010) ("In determining ownership for purposes of standing, labels given by the parties do not control. Rather, the court must determine whether the party alleging effective ownership has in fact received all substantial rights from the patent owner.").

To the extent that OnAsset conveyed any rights to IT, Main Street maintained its exclusionary rights as a resulted of the 2017 Security Agreement. This contractual scheme left IT without the substantial rights necessary for statutory standing. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA,* 944 F.2d 870, 875 (Fed. Cir. 1991) (holding grantee held all substantial patent rights where grantor retained reversionary right to patent if grantee filed bankruptcy and grantee could not sublicense the patent without grantor's consent); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251–52 (Fed. Cir. 2000) (holding grantee held all substantial patent rights where grantor retained reversionary right to patents in event of breach or insolvency and grantee could not assign its interest in the patents without consent of the grantor, which the grantor could not unreasonably withhold).

The cases IT cites in its Opposition further support Zebra's argument. For instance, in *Eidos Display, LLC v. AU Optronics Corp.,* the court denied a joinder motion because the movant failed to show the third party had other critical rights, such as the right to freely license or sublicense the patent. Case No. 6:11-cv-201, 2016 WL 6680578, at *5 (E.D. Tex. November 14, 2016) ("'[I]f the patentee has retained the right to freely license the patent, it stands to lose substantial rights if the claims are held invalid or the patent held unenforceable,' and thus must be joined with licensee to bring suit") (quoting *Aspex Eyewear Inc. v. Miracle Optics, Inc.,* 434 F.3d 1336 (Fed. Cir. 2006)). Here, Main Street's right to "sell, assign, transfer, pledge, encumber or otherwise dispose of the ['247 Patent]" and "enforce the ['247 Patent] and any licenses thereunder" deprives IT of statutory standing.

Because IT lacks both constitutional and statutory standing, this Court must grant Zebra's summary judgment motion and dismiss IT's patent claims against Zebra. Where a plaintiff "hold[s] less than all substantial rights to the patent and lack[s] exclusionary rights under the patent statutes

7

to meet the injury in fact requirement" cannot bring suit or even joint a suit. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340–41 (Fed. Cir. 2007) (citing Sicom Sys., Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 976 (Fed.Cir.2005)). This type of standing deficiency cannot be cured even by adding a party. *Marrow*, 499 F.3d at 1341.[2]

### III.    ZEBRA'S PRIOR MOTION TO DISMISS SHOULD NOT BE TREATED AS A MOTION FOR SUMMARY JUDGMENT

IT's argument that Zebra's summary judgment motion is a motion to reconsider its prior motion to dismiss is wrong. On January 6, 2021, Zebra filed its Motion to Dismiss alleging IT lacked constitutional and statutory standing to bring suit. D.I. 061-1. On February 2, 2021, the Court issued an order captioned "ORDER DENYING DEFENDANT'S MOTION TO DISMISS." (D.I. 75 at 1). The Court neither entered an order of judgment nor held that Zebra's motion to dismiss was interpreted as a motion for summary judgment. *Id*. Therefore, IT's argument that Zebra's present motion is somehow a motion for reconsideration under Fed. R. Civ. P. 59(e) or motion for relief from judgment under Fed. R. Civ. P. 60(c) should be rejected.

Even if the Court interprets Zebra's motion to dismiss as a motion for summary judgment, Fed. R. Civ. P. 60 does not preclude the Court from ruling on Zebra's present motion. Under Rule 60(b)(6), a court may "relieve a party or its legal representative from a final judgment, order or proceeding" based on "any ... reason that justifies relief." Furthermore, Rule 12 permits the Court to evaluate its subject matter jurisdiction and consider the question of standing at any time. Fed. R. Civ. P. 12(h)(3). Zebra's instant motion presents new evidence not available when Zebra filed

---

[2] Should the Court find IT only lacks statutory standing, Main Street—the party that holds all substantial rights—must be joined. *Marrow*, 499 F.3d at 1340 ("The second category of plaintiffs hold exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patent…The patentee is joined for the purpose of avoiding the potential for multiple litigations and multiple liabilities and recoveries against the same alleged infringer.") (internal citations omitted)

its motion to dismiss. For example, Zebra did not have access to the underlying Loan Agreement between IT, OnAsset and Main Street. Zebra also presents new evidence discovered ***only after this Court ordered additional depositions and document production*** establishing that OnAsset and IT ███████████████ under the Loan Agreement and Security Agreements with Main Street, those ████ have continued to this day, and the ████ have neither been cured nor waived. *See*, *supra*, Section I; D.I. 116 at Section II; D.I. 116-2, May 26, 2021 Email to Court, 4-5.

For these reasons, the Court should reject IT's argument that this motion is a motion for reconsideration under Fed. R. Civ. P. 59(e) or motion for relief from judgment under Fed. R. Civ. P. 60(c). Alternatively, the Court should permit Zebra to present its motion for summary judgment under Fed. R. Civ. P. 60(b)(6) and 12(h)(3).

**IV.   CONCLUSION**

The foregoing establishes that there is no dispute of material fact that IT lacks an exclusionary right in the '247 Patent and therefore lacks constitutional standing to bring this suit. The foregoing further establishes that there is no dispute of material fact that IT lacks all substantial rights in the '247 Patent and lacks statutory standing to bring this suit. Accordingly, this Court should grant Zebra's summary judgment motion for lack of standing against IT.

Date: March 17, 2022

Respectfully submitted,

*/s/ Brent A. Hawkins*
Brent A. Hawkins*
California Bar No. 314266
Illinois Bar No. 6243086
brent.hawkins@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

Jason C. White
Illinois Bar No. 6238352
Amanda S. Williamson*
Illinois Bar No. 6280051
James J. Kritsas*
Illinois Bar No. 6313286
MORGAN, LEWIS & BOCKIUS LLP
110 N Wacker Drive Chicago, IL 60606
Telephone: (312) 324-1000
Facsimile: (312) 324-1001

Kandis C. Gibson*
Washington D.C. Bar No. 988951
Calvin M. Brien*
Washington D.C. Bar No. 1659979
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

*Admitted pro hac*

Elizabeth M. Chiaviello Texas Bar No. 24088913
elizabeth.chiaviello@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002-5006
T. 713.890.5000
F. 713.890.5001

***Attorneys for Defendant***
***Zebra Technologies Corporation***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 17, 2022, notice of the filing for the foregoing sealed document was serve on all counsel of record who have appeared in this case via the Court's CM/ECF system per Local Rule CV-5. The undersigned further certifies a true and correct copy of the foregoing document was served via electronic mail on counsel of record.

*/s/ Brent A. Hawkins*
Brent A. Hawkins
