IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TEXAS WACO
DIVISION

| | |
|---|---|
| INTELLECTUAL TECH LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ZEBRA TECHNOLOGIES CORPORATION,<br><br>    Defendant. | Case No. 6:19-cv-00628-ADA<br><br>■■■■■■■■■■■■■■■■■■■■■■■<br><br>**PUBLIC VERSION** |

**DEFENDANT ZEBRA TECHNOLOGIES CORPORATION'S
RESPONSE TO PLAINTIFF INTELLECTUAL TECH LLC'S
MOTION FOR RECONSIDERATION AND REINSTATEMENT**

Defendant, Zebra,[1] respectfully submits this response to Plaintiff Intellectual Tech's Motion for Reconsideration and Reinstatement (the "Motion" or "Motion for Reconsideration"). *See* D.I. 147.

I. **INTRODUCTION**

In its Motion for Reconsideration, Intellectual Tech does not dispute that ■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ triggered provisions in the 2011 and 2017 Patent and Trademark Security Agreements that transferred rights in the '247 Patent to their lender, Main Street. Nor does Intellectual Tech offer any new evidence or identify any changes in law that warrants reconsideration.

---

[1] Capitalized terms not already defined have the same meaning as set forth in Zebra's Opening Brief in Support of its Motion for Summary Judgment for Lack of Standing Pursuant to Federal Rules of Civil Procedure 56.  *See* D.I. 116.

1

Instead, Intellectual Tech improperly rehashes its "automatic transfer theory" argument, which the Court addressed and rejected in its opinion. Intellectual Tech now argues that it could not have lost its exclusionary rights because Main Street never foreclosed, otherwise took title to, or assigned the '247 Patent. D.I. 147 at 5. This is the same argument that Intellectual Tech previously advanced, *i.e.*, that Intellectual Tech did not divest its exclusionary rights because it maintains ownership of '247 Patent, just worded differently. *Cf* D.I. 123 at 5 *with* D.I. 147 at 4-5. As such, Intellectual Tech's argument again "misses the mark". D.I. 144 at 8.

As the Court has already made clear, "the issue [is] not whether *ownership* of the '247 patent transferred upon default, but rather whether the rights Main Street received deprived IT of its . . . ability to exclude others from using the [patented] invention.'" D.I. 144 at 8. This Court has already answered that question in the affirmative, finding ████████████ ████████ vested Main Street with the rights to sell, assign, and license the '247 Patent, thereby divesting Intellectual Tech of the exclusionary rights necessary for constitutional standing. D.I. 144 at 7-8. Accordingly, Intellectual Tech's Motion for Reconsideration should be denied.

## II.  PROCEDURAL HISTORY

On February 9, 2022, Zebra filed its Motion for Summary Judgement for Lack of Standing. D.I. 116-1. After fully considering the parties' briefing and hearing oral argument, this Court determined that Zebra's motion should be treated as a renewed motion to dismiss under Rule 12(b)(1) and dismissed the case for lack of constitutional standing. D.I. 144 at 14.

In dismissing this case, the Court held that Intellectual Tech lacked the exclusionary rights necessary for constitutional standing because Zebra could have obtained a license to the '247 Patent from Intellectual Tech's lender, Main Street. D.I. 144 at 12-14. The Court's decision was based on a series of agreements among Intellectual Tech, its parent company, OnAsset, and

Main Street, including their Loan Agreement, ███████████████, and 2011 and 2017 Patent and Trademark Security Agreements. D.I. 144 at 5, 7, 12-15.

The Court found that ████████████████████████████████████████, the 2011 Patent and Trademark Security Agreement between OnAsset and Main Street vested Main Street (1) with the right "'at its option,' '[to] sell, assign, transfer, pledge, encumber or otherwise dispose' of the '247 Patent" ██████████████████████████████████ and (2) "'irrevocably' appointed Main Street as OnAsset's 'attorney-in-fact' with 'the right (but not the duty)' to execute any agreement in OnAsset's name necessary for Main Street to enforce, license, sell, assign, transfer, pledge, or otherwise transfer title in the '247 patent." D.I. 144 at 5 (quoting D.I. 62-2), 7. The Court further found that ████████████████████████████████████████ ████████████████████████████ triggered similar provisions in the 2017 Patent and Trademark Security Agreement. D.I. 144 at 6. As the Court held, the rights given to Main Street under these agreements divested Intellectual Tech of the exclusionary rights necessary to bring this action. D.I. 144 at 8.

In its analysis, the Court rejected Intellectual Tech's argument that its continued ownership of the '247 Patent (*i.e.*, that the actual ownership of the '247 Patent did not "automatically transfer" to Main Street) precluded a finding that the defaults divested Intellectual Tech of its exclusionary rights. D.I. 144 at 8. As the Court explained, "IT's opposition 'misses the mark' . . . 'The issue [is] not whether *ownership* of the '247 patent transferred ██████ but rather whether the rights Main Street received deprived IT of its . . . ability to exclude others from using the [patented] invention.'" D.I. 144 at 8. The Court then correctly found that "IT could not have an exclusionary right against Zebra sufficient to engender Article III standing here" because of the rights that transferred to Main Street ████████. D.I. 144 at 13.

3

On June 15, 2022, Intellectual Tech filed the instant Motion for Reconsideration. As detailed below, Intellectual Tech's Motion should be denied because it fails to identify any proper grounds for reconsideration.

### III. LEGAL STANDARD

A motion to reconsider is treated as a motion to alter or amend judgment pursuant to Rule 59(e). *United States ex rel. Ramadoss v. Caremark Inc.*, No. SA-99-CA-00914-WRF, 2009 WL 10670907, at *1 (W.D. Tex. June 19, 2009) (citing *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003)). A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgement." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004).

A court will not grant a Rule 59(e) motion unless: (1) the judgment was based upon a manifest error of fact or law; (2) there exists newly discovered or previously unavailable evidence; or (3) there has been an intervening change in controlling law. *Ramadoss*, 2009 WL 10670907 at *1 (citing *Templet*, 367 F.3d at 478). Finally, the Supreme Court has stated that courts should not revisit its prior decisions "in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988). Intellectual Tech's Motion for Reconsideration fails to demonstrate any basis for reconsideration. It merely rehashes already considered evidence and legal arguments and should be denied.

### IV. ARGUMENT

In its Motion for Reconsideration, Intellectual Tech argues that Main Street's rights ▬▬ ▬▬ could not divest Intellectual Tech of its exclusionary rights because Main Street failed to foreclose on its Loan Agreement or otherwise take title to or assignment of the '247 Patent.

4

Intellectual Tech's arguments should be rejected for two reasons.  *First*, Intellectual Tech's argument rests on a fundamental misreading of Intellectual Tech's and OnAsset's agreements with their lender, Main Street, that requires Main Street to foreclose on, take title to, or obtain assignment of the '247 Patent before exercising its contractual rights.  D.I. 147 at 4.  Such requirements are contrary to the undisputed, plain wording of the agreements and the rights granted to Main Street under them and should be rejected.  *Second*, this argument merely rehashes the "automatic transfer theory" argument that this Court addressed and rejected in its opinion.  As such, it is not a proper ground for reconsideration.  *Templet*, 367 F.3d at 478-79.

### A. Foreclosure Is Not A Prerequisite For Main Street To Exercise Its Rights Under The 2011 And 2017 Patent And Trademark Security Agreements

Intellectual Tech argues that "the only way for [it] to lose any exclusionary rights was for Main Street to foreclose on the assets and take title to the '247 patent via a written assignment."  D.I. 147 at 1.  Intellectual Tech is wrong.  Neither foreclosure nor transfer of title nor assignment were prerequisites for Main Street to exercise its rights under the 2011 and 2017 Patent and Trademark Security Agreement upon default.

As this Court found, the 2011 and 2017 Patent and Trademark Security Agreements gave Main Street the unfettered right "'[to] sell, assign, transfer, pledge, encumber or otherwise dispose' of the '247 Patent" ███████████████████████████████████████████████████████████████████████████████████████████████████████████.  D.I. 144 at 6-7.  Nothing in the agreements premises these rights on Main Street's foreclosure on the Loan Agreement or a transfer in title to or assignment of the '247 Patent.[2]

---

[2] Contrary to Intellectual Tech's argument, this Court need not examine the "intent" of the parties in decerning a contract's meaning (D.I. 147 at 7-8) where the plain language is clear on its face. *See David J. Sacks, P.C v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) ("An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports.");

Quite the opposite, the agreements expressly provided Main Street with a vehicle for enforcing its rights *without* foreclosing or taking title to the '247 Patent by "'irrevocably' appoint[ing] Main Street as OnAsset's 'attorney-in-fact' with 'the right (but not the duty)' to execute any agreement in OnAsset's name necessary for Main Street to enforce, license, sell, assign, transfer, pledge, or otherwise transfer title in the '247 patent." D.I. 144 at 5 (quoting D.I. 62-2), 7. Even Intellectual Tech admits that this power of attorney "gave Main Street the option to manage Intellectual Tech's decisions with respect to the enumerated actions stated in Section 6, any derivative actions, such as 'to grant or issue any exclusive or non-exclusive license under the Patent or Trademarks to any third party,' and the mechanism to do so—Power of Attorney." D.I. 147 at 7. It is clear that the agreements not only contemplated that Main Street could exercise its rights outside of foreclosure or a transfer of title, but also sought to facilitate those actions, including selling, assigning, licensing or otherwise disposing of the '247 Patent to third parties, such as Zebra.

The case on which Intellectual Tech relies to support its argument that a grant of title must accompany the transfer of exclusionary rights, *Abraxis Bioscience, Inc. v. Navinta LLC*, is inapposite. In *Abraxis*, the Federal Circuit held that a patent plaintiff could not correct a standing defect with a *nunc pro tunc* assignment executed after filing its lawsuit. 625 F.3d 1359, 1366-67 (Fed. Cir. 2010). In that case, the patent holder had agreed to assign the patent to the plaintiff at a future date through a separate and subsequent agreement, which was executed after the case was filed. *Id*. at 1365-66. The Federal Circuit held that the specific language used was not sufficient to automatically assign the patent at the time of the first agreement and acted only as a promise to

---

*see also Dodocase VR, Inc. v. MerchSource, LLC*, 767 Fed.Appx. 930, 934 (Fed. Cir. 2019) (general contract interpretation is not within the exclusive jurisdiction of the Federal Circuit and state law applies). .

6

do so in the future. *Id*. Those facts are inapplicable here. Main Street's rights under the 2011 and 2017 Patent Security Agreement were not premised on a future agreement but rather transferred upon a specific event—███████████████████████████████.

Because, Intellectual Tech has failed to identify any error of fact or law in the Court's opinion, its Motion for Reconsideration should be denied.

### B. This Court Properly Rejected Intellectual Tech's "Automatic Transfer Theory" Argument And Need Not Revisit It Here

This Court also should deny Intellectual Tech's Motion because it improperly re-argues Intellectual Tech's "automatic transfer theory" defense. In responding to Zebra's motion for summary judgment, Intellectual Tech mischaracterized Zebra's arguments as requiring an "automatic transfer" of ownership in the '247 Patent from Intellectual Tech to Main Street and then argued that Zebra's motion should be denied because ownership did not automatically transfer to Main Street upon Intellectual Tech's and OnAsset's default. *See* D.I. 123 at 5-9. But, as this Court explained, the "issue was not whether *ownership* of the '247 patent transferred upon default, but rather whether the rights that Main Street received deprive IT of its . . . ability to exclude others from using the [patented] invention." D.I. 144 at 8. As the Court then correctly found, the rights, regardless of the actual ownership or title, that vested with Main Street ███████ precluded Intellectual Tech from establishing constitutional standing. D.I. 144 at 6.

Intellectual Tech's Motion for Reconsideration improperly attempts to rehash this argument by now claiming that exclusionary rights could not pass to Main Street without a transfer of title or assignment obtained through foreclosure. *See* D.I. 147 at 4-7. This Court should reject Intellectual Tech's argument for the same reason: *ownership* (*i.e.*, holding title in or assignment of) has no bearing on the rights actually granted under the 2011 and 2017 Patent and Trademark Security Agreements upon OnAsset's and Intellectual Tech's defaults. Those rights included the

7

rights to sell, assign, license or otherwise dispose of the '247 Patent to third parties, such as Zebra, and divested Intellectual Tech of standing regardless of who owned or held title to the patents.

## V.     CONCLUSION

For the foregoing reasons, this Court should deny Intellectual Tech's Motion for Reconsideration because Intellectual Tech has failed to identify any proper ground, either in fact or in law, that warrant reconsideration.

Date: June 29, 2022							Respectfully submitted,

/s/ Brent A. Hawkins
Brent A. Hawkins*
California Bar No. 314266
Illinois Bar No. 6243086
brent.hawkins@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

Amanda S. Williamson*
Illinois Bar No. 6280051
James J. Kritsas*
Illinois Bar No. 6313286
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive
Chicago, IL 60606
Telephone: (312) 324-1000
Facsimile: (312) 324-1001

*Admitted pro hac

Elizabeth M. Chiaviello
Texas Bar No. 24088913
elizabeth.chiaviello@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002-5006
T. 713.890.5000
F. 713.890.5001

***Attorneys for Defendant***
***Zebra Technologies Corporation***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 29, 2022, notice of the filing for the foregoing sealed document was serve on all counsel of record who have appeared in this case via the Court's CM/ECF system per Local Rule CV-5. The undersigned further certifies a true and correct copy of the foregoing document was served via electronic mail on counsel of record.

<em>/s/ Brent A. Hawkins</em><br>
Brent A. Hawkins