IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **INTELLECTUAL TECH LLC,**<br>　　　　Plaintiff,<br><br>　　v.<br><br>**ZEBRA TECHNOLOGIES CORPORATION,**<br>　　　　Defendant. | 6:19-cv-00628-ADA |

### MEMORANDUM OPINION & ORDER

Came on for consideration this date is the Joint Motion for Entry of Disputed Bill of Costs, ECF No. 148, and Plaintiff Intellectual Tech LLC's Motion for Reconsideration and Reinstatement. ECF No. 147 (the "Motion"). Defendant Zebra Technologies Corporation ("Zebra") responded to the Motion on June 29, 2022, ECF No. 150, to which Intellectual Tech LLC ("IT") replied on July 6, 2022, ECF No. 151. After careful consideration of the motions, the parties' briefs, and the applicable law, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the Joint Motion for Entry of Disputed Bills of Costs, ECF No. 148, and **DENIES** Plaintiff's Motion for Reconsideration and Reinstatement, ECF No. 147.

### I. BACKGROUND

Whether IT suffered a constitutional injury sufficient to give it standing depends on a series of interrelated agreements IT entered into with its parent, OnAsset Intelligence, Inc. ("OnAsset"), and OnAsset's creditor, Main Street Capital Corporation ("Main Street"). OnAsset gave Main Street a security interest in U.S. Patent No. 7,233,247 (the "'247 patent") in exchange for a loan. And when OnAsset defaulted on that loan, Main Street gained certain rights in the '247 patent by dint of its security interest. OnAsset and Main Street later entered a forbearance agreement to deal with OnAsset's default. IT sprung from that forbearance and was given, along with title to the '247

1

patent, a mandate to monetize the '247 patent. In furtherance of that mandate, IT sued Zebra in this Court on October 22, 2019, alleging infringement of the '247 patent. *See* ECF No. 1. But the rights Main Street maintained in the '247 patent—through security interests followed by defaults—deprived IT of constitutional standing.

The Court concluded as much in an opinion rendered May 20, 2022. *See Intellectual Tech LLC v. Zebra Techs. Corp.*, No. 6:19-cv-00628-ADA, 2022 U.S. Dist. LEXIS 90905, at *19 (W.D. Tex. May 20, 2022) (the "*Dismissal Op.*"). The Court determined that, on October 22, 2019— when IT initiated this Action—IT was in default on a loan from Main Street. *See id.* at *10. According to the relevant contractual provisions, Main Street received certain rights the moment IT defaulted. *See id.* These included the unfettered right to enforce, "sell, assign, transfer, pledge, encumber or otherwise dispose of" the '247 patent. *See id.* The Court concluded that IT had no exclusionary right against Zebra at the time IT initiated this Action because Main Street could have licensed Zebra's allegedly infringing conduct on that day. *Id.* This, the Court opined, inevitably followed from one vein of relevant caselaw. *Id.* (first citing *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257 (Fed. Cir. 2010); then citing *Uniloc USA, Inc. v. Motorola Mobility, LLC*, No. CV 17-1658-CFC, 2020 WL 7771219, at *3 (D. Del. Dec. 30, 2020); and then citing *Uniloc USA, Inc. v. Apple, Inc.*, 2020 U.S. Dist. LEXIS 228257, 2020 WL 7122617, at *7–8 (N.D. Cal. Dec. 4, 2020)).

IT asks the Court to reconsider that ruling under Federal Rule of Civil Procedure 59(e) to correct what it sees as manifest errors. Identifying no manifest error, the Court declines to do so.

## II. LEGAL STANDARD

### A.   Article III Standing

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650, 198 L. Ed. 2d 64 (2017). To have

standing, IT "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). "Th[at] triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement," and IT, as "the party invoking federal jurisdiction[,] bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (footnote omitted).

Regional circuit law governs standards for the "dismissal of a complaint for lack of standing unless the issue is unique to patent law and therefore exclusively assigned to the Federal Circuit." *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A.*, 19 F.4th 1315, 1323 (U.S. Fed. Cir. 2021). Federal Circuit law governs an entity's constitutional standing in a patent infringement action. *See WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263 (Fed. Cir. 2010).

"[E]ach element of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the same evidentiary requirements of that stage of litigation." *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 366 (5th Cir.), *as revised* (Feb. 1, 2018), *cert. denied*, 139 S. Ct. 211, 202 L. Ed. 2d 126 (2018) (quotation marks omitted). Thus, at summary judgment, IT cannot rely on "mere allegations"; it "must set forth by affidavit or other evidence specific facts" supporting standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (quotation marks omitted).

Ascertaining standing in a patent-infringement case requires an inquiry into both Article III or "constitutional" standing and what has been called "statutory" or "prudential" standing. To have constitutional standing, a plaintiff must have an "exclusionary right." *Morrow v. Microsoft*

3

*Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007). To have statutory standing, a plaintiff must have "all substantial rights" to the asserted patent. *Id.*

B.   **Reconsideration**

Motions for reconsideration are made under Rule 59(e) of the Federal Rules of Civil Procedure. "Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012).

C.   **Costs**

Federal Rule of Civil Procedure 54(d)(1) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Federal Circuit law governs the definition of a "prevailing party" in patent cases. *See, e.g.*, *Raniere v. Microsoft Corp.*, 887 F.3d 1298 (Fed. Cir. 2018). Section 1920 of Title 28 "control[s] a federal court's power to hold a losing party responsible for the opponent's fees" by limiting what costs can be awarded. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987).

### III. ANALYSIS

A.   **The Court Will Not Reconsider the *Dismissal Op.***

The *WiAV* and *Uniloc* opinions laid down the following principle: a patent title holder can deprive itself of exclusionary rights by vesting a third party with a right to assign or sublicense the patent (even if the third party never exercises those rights). The Court cannot stress this point enough: holding title to a patent is not the same as holding exclusionary rights to a patent. In the *Uniloc* opinions, the patent title holders, the Unilocs, did not have exclusionary rights because they vested a third party, Fortress, with a right to sublicense the patent. Fortress did not have an

exclusionary right in the asserted patent, but Fortress's right to sublicense the same sufficed to deprive the Unilocs of their exclusionary right. *See Dismissal Op.* at *15–17.

IT has not grasped these concepts. Its briefing returns, again and again, to whether Main Street received exclusionary rights in the '247 patent. To whether Main Street ever deprived IT of title to the '247 patent.[1] That is not the critical question. The Court affirms that, upon default, title to the '247 patent remained with IT. *See Dismissal Op.* at *7 ("[Default] did not, however, automatically divest OnAsset of title to the '247 patent."). The critical question is whether Main Street received rights upon IT's default that deprived IT—the undisputed title holder—of exclusionary rights. Just as Fortress's unfettered right to sublicense deprived the title holder, the Unilocs, of exclusionary rights, Main Street's unfettered right to license and/or assign the '247 patent deprived IT of exclusionary rights.[2] Main Street did not have to take title to the '247 patent to achieve this. It bears repeating: Main Street did *not have to take title to the '247 patent* to achieve this. The Motion's fixation on Main Street not taking title to the '247 patent is, therefore, misplaced.

Despite IT's holding title to the '247 patent, IT lacked exclusionary rights because, on default, Main Street had the right to assign or license the '247 patent to Zebra (or anyone else). In

---

[1] *See, e.g.*, ECF No. 147 at 1 ("The other two options do not transfer any exclusionary rights from Intellectual Tech to Main Street . . . ."); *id.* at 4 ("[N]one of those three options provides a 'present grant' of exclusionary rights to Main Street."); *id.* at 5 ("Main Street received no exclusionary rights."); *id.* at 5 ("Main Street does not have title or any exclusionary rights to the '247 patent."); *id.* at 10 ("Only foreclosure would transfer the exclusionary rights to Main Street . . .); ECF No. 151 at 1 (stating that Main Street's power of attorney "does not mean that Main Street had any exclusionary rights"); *id.* ("Because Main Street did not have title to the '247 Patent, Zebra could not obtain title from Main Street."); *id.* at 2 ("Main Street received no exclusionary rights . . . ."); *id.* ("[F]oreclosure is a prerequisite for Main Street to exercise exclusionary rights."); *id.* at 4 ("The power of attorney does not give Main Street any independent right to exclude.").

[2] The *Dismissal Op.* explains this in detail, with reference to *WiAV* and the *Uniloc* opinions. *See Dismissal Op.* at *13–17.

ceding these rights to Main Street, IT opened the door for Main Street to license Zebra's accused conduct such that IT could not exercise its exclusionary rights against Zebra. *Cf. WiAV*, 631 F.3d at 1266 ("[A]n exclusive licensee lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it."). And it is Zebra's *ability* to receive a license to the patent[3] that destroys IT's exclusionary rights against Zebra.

IT may be correct that it is more accurate to say that, on default, Main Street has an unfettered right to license and/or assign the '247 patent *in IT's name*. It concedes that Zebra could obtain title to the '247 patent. ECF No. 147 at 9 ("Zebra could only obtain title from [IT], whether under control of Main Street, Main Street's delegate, or otherwise."). But in IT's reading of the relevant agreements, Main Street, acting as IT's "agent-in-fact," would have to assign or license the '247 patent to Zebra in IT's name. ECF No. 147 at 5–9. It proclaims that this distinction "is the whole ball game." *Id.* Why? IT won't tell.[4]

The Court, having already been frustrated by IT's unwillingness to address the significance of the distinction, does not appreciate IT's continued silence. *Dismissal Op.* at *18 ("The Court cannot figure how these distinctions are material."). During default, Main Street may assign or license the '247 patent to Zebra or anyone else, it may just have to do so in IT's name. That is the extent of IT's involvement; IT has no veto power or authority to otherwise constrain Main Street's discretion regarding who can receive a license or title to the '247 patent. The Court's preceding analysis is completely unaffected by this lone condition on Main Street's right to license and/or assign the '247 patent during default. Main Street plainly had "the right to allow the defendant to

---

[3] IT concedes this. ECF No. 147 at 9 ("Zebra could only obtain title from Intellectual Tech, whether under control of Main Street.").

[4] For this proposition, IT cites *Dismissal Op.* at *17 n.3 without indicating what reasoning therein supports IT's position.

use the patent," so IT did "not have the ability to prevent the defendant from practicing" it. *Uniloc USA, Inc. v. Motorola Mobility, LLC*, 2020 U.S. Dist. LEXIS 244512, at *15. In conclusion, Main Street did not receive title to the '247 patent on default, but it did receive rights sufficient to deprive title-holder IT of its exclusionary rights. *See Dismissal Op.* at *11–19. Not having those rights when it filed suit, IT lacked constitutional standing. *See id.*

IT has not given this Court any reason to reconsider the *Dismissal Op*.

### B. Zebra is Not a Prevailing Party

Zebra has requested that the Court tax costs pursuant to Rule 54(d)(1), Local Rule 54, and § 1920. Zebra is not, however, a "prevailing party" under Rule 54(d)(1) because the Court dismissed IT's claims on jurisdictional grounds and without prejudice. Accordingly, Zebra is not entitled to costs.

As the Supreme Court has recently described:

> Congress has included the term "prevailing party" in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner. . . . The Court has said that the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." . . . This change must be marked by "judicial imprimatur."

*CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016) (citations omitted). It further clarified that a "defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason." *Id.* at 431.

In *Raniere v. Microsoft Corp.*, the Federal Circuit followed *CRST* to affirm a district court's deeming defendants the "prevailing party" for purposes of 35 U.S.C. § 285[5] after the plaintiff's claims were dismissed for lack of standing. 887 F.3d at 1307. The panel described the defendants

---

[5] The Federal Circuit treats "the prevailing party issue under Rule 54 and § 285 in a similar fashion." *Raniere*, 887 F.3d at 1307 n.3.

as having "won" by achieving a dismissal *with prejudice*. *Id.* at 1306. "[T]hey prevented [the plaintiff] from achieving a material alteration of the relationship between them, based on a decision marked by 'judicial imprimatur.'" *Id.* In categorizing the defendants as "prevailing," the Court also took great pains to discuss how dismissal was "with prejudice," equating that to a decision on the merits. *Id.* at 1308.

Here, dismissal was without prejudice. *See Dismissal Op.* at *19. The Court concluded that IT lacked constitutional standing but granted dismissal without prejudice. IT cannot resuscitate this Action by resolving defects in its exclusionary rights, *see id.*, but IT is entitled to cure those defects and refile this Action. Zebra contends that "[i]t remains hypothetical if [IT] can or ever will be able to cure the standing defects that required dismissal of this lawsuit and refile this suit." ECF No. 148 at 3. IT disagrees, arguing that this "litigation is essentially just postponed until . . . the standing defect is cured and the case is refiled." *Id.* at 5. The existence of Main Street and IT's 2021 Forbearance Agreement suggests that IT may, with Main Street's cooperation, be able to cure its standing defects (if it has not done so already). Accordingly, the Court affirms that dismissal was appropriately without prejudice.

Given that, and *Raniere*'s focus on the significance of dismissal *with* prejudice, the Court concludes Zebra is not a prevailing party. The dismissal order did not alter the legal relationship between the parties given that IT may simply re-file this Action once it cures standing defects. This accords with how circuit courts beyond the Federal Circuit have treated judgments without prejudice. *See Citi Trends, Inc. v. Coach, Inc.*, 780 F. App'x 74, 79 (4th Cir. 2019) (collecting cases describing how judgments with "no preclusive effect on the plaintiff's ability to re-file does not confer prevailing party status"); *Dunster Live, LLC v. LoneStar Logos Mgmt. Co., LLC*, 908 F.3d 948, 951 (5th Cir. 2018); *Mixing & Mass Transfer Techs., LLC v. SPX Corp.*, No. CV 19-

529 (MN), 2020 WL 6484180, at *3 (D. Del. Nov. 4, 2020) (holding that an order dismissing without prejudice "would not materially alter the legal relationship of the parties"). At bottom, Zebra is not a prevailing party and so is not entitled to costs under Rule 54(d)(1) or § 1920.

### C.      The Court Grants IT's Extension

In the Joint Motion for Entry of Disputed Bill of Costs, IT moved for a retrospective four-day extension under Federal Rule of Civil Procedure 6(b)(1)(B) for its objections to Zebra's bill of costs. Based on IT's representations, the Court is satisfied that IT promptly identified its error and that IT's delay in issuing objections was brief, accidental, and acted little prejudice upon Zebra.

## IV. CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Reconsideration and Reinstatement, ECF No. 147, is **DENIED**.

It is **FURTHER ORDERED** that the parties' Joint Motion for Entry of Disputed Bill of Costs, ECF No. 148, is **GRANTED-IN-PART** and **DENIED-IN-PART**. IT's motion for an extension therein is **GRANTED** and the motion for entry of the bill of costs is **DENIED**.

SIGNED this 3rd day of August, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE